# EXHIBIT A



No Items in Cart  elamb

**Civil Docket Report**

A $5 Convenience fee will be added to the transaction at checkout.

## Case Description

| | |
|---|---|
| **Case ID:** | 200701751 |
| **Case Caption:** | BARKER ETAL VS TYSON FOODS, INC. ETAL |
| **Filing Date:** | Monday , July 27th, 2020 |
| **Court:** | MAJOR JURY-COMPLEX |
| **Location:** | City Hall |
| **Jury:** | JURY |
| **Case Type:** | PERSONAL INJURY - OTHER |
| **Status:** | LISTED FOR SETTLEMENT CONF |

## Related Cases

*No related cases were found.*

## Case Event Schedule

| Event | Date/Time | Room | Location | Judge |
|---|---|---|---|---|
| PROJECTED SETTLEMENT CONF DATE | 01-AUG-2022 09:00 AM | City Hall | Courtroom 602, City Hall | NEW, ARNOLD L |
| PROJECTED PRE-TRIAL CONF. DATE | 03-OCT-2022 09:00 AM | City Hall | Courtroom 602, City Hall | NEW, ARNOLD L |
| PROJECTED TRIAL DATE | 07-NOV-2022 09:00 AM | City Hall | Courtroom 602, City Hall | NEW, ARNOLD L |

## Case motions

*No case motions were found.*

## Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | MONGELUZZI, ROBERT J |
| **Address:** ONE LIBERTY PLACE 52ND FLOOR 1650 MARKET ST. PHILADELPHIA PA 19103 (215)496-8282 VSmith@smbb.com | | **Aliases:** | *none* | |
| 2 | 1 | | PLAINTIFF | BARKER, RENATA |
| **Address:** 215 PARKDALE ROAD PHILADELPHIA PA 19154 | | **Aliases:** | *none* | |
| 3 | 1 | | ADMINISTRATRIX - PLAINTIFF | BARKER, RENATA |
| **Address:** 215 PARKDALE ROAD PHILADELPHIA PA 19154 | | **Aliases:** | *none* | |
| 4 | 11 | | DEFENDANT | TYSON FOODS INC |
| **Address:** 600 NORTH 2ND STREET SUITE 401 HARRISBURG PA 17101 | | **Aliases:** | CT CORPORATION SYSTEM C/O | |
| 5 | 11 | | DEFENDANT | ORIGINAL PHILLY STEAK INC |
| **Address:** 1801 MARKET STREET, SUITE 800 PHILADELPHIA PA 19103 | | **Aliases:** | ORIGINAL PHILLY CHEESESTEAK COMPANY DBA | |
| 6 | 11 | | DEFENDANT | ORIGINAL PHILLY HOLDINGS INC |
| **Address:** 520 E HUNTING PARK AVENUE | | **Aliases:** | ORIGINAL PHILLY CHEESESTEAK COMPANY DBA | |

| | | | PHILADELPHIA PA 19124 | |
|---|---|---|---|---|

| 7 | 1 | | ATTORNEY FOR PLAINTIFF | GOODMAN, JEFFREY P |
|---|---|---|---|---|
| **Address:** | SALTZ MONGELUZZI BARRETT<br>52ND FL ONE LIBERTY PLACE<br>1650 MARKET STREET<br>PHILADELPHIA PA 19103<br>(215)496-8282<br>jgoodman@smbb.com | **Aliases:** | *none* | |

| 8 | 1 | | ATTORNEY FOR PLAINTIFF | WIGRIZER ESQ, STEVEN G |
|---|---|---|---|---|
| **Address:** | 1650 MARKET STREET<br>ONE LIBERTY PLACE, 51ST FLOOR<br>PHILADELPHIA PA 19103<br>(215)575-2969<br>dadams@smbb.com | **Aliases:** | *none* | |

| 9 | 1 | | ATTORNEY FOR PLAINTIFF | WEISS, JASON S |
|---|---|---|---|---|
| **Address:** | SALTZ MONGELUZZI<br>& BENDESKY PC<br>1650 MARKET STREET, 52ND FLOOR<br>PHILADELPHIA PA 19103<br>(215)496-8282<br>jweiss@smbb.com | **Aliases:** | *none* | |

| 10 | | | TEAM LEADER | NEW, ARNOLD L |
|---|---|---|---|---|
| **Address:** | 606 CITY HALL<br>PHILADELPHIA PA 19107<br>(215)686-7260 | **Aliases:** | *none* | |

| 11 | | | ATTORNEY FOR DEFENDANT | CATTO, WILLIAM H |
|---|---|---|---|---|

| Address: | FREEMAN MATHIS & GARY<br>1600 MARKET STREET<br>SUITE 1210<br>PHILADELPHIA PA 19103<br>(267)608-1740<br>wcatto@fmglaw.com | Aliases: | *none* | |
|---|---|---|---|---|
| 12 | 11 | | ATTORNEY FOR DEFENDANT | LAMB, ERIN E |
| Address: | 1600 MARKET STREET<br>SUITE 1210<br>PHILADELPHIA PA 19103<br>(215)971-2929<br>elamb@fmglaw.com | Aliases: | *none* | |

## Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount | Approval/ Entry Date |
|---|---|---|---|---|
| 27-JUL-2020 02:19 PM | ACTIVE CASE | | | 27-JUL-2020 03:06 PM |
| **Docket Entry:** | E-Filing Number: 2007050389 | | | |
| 27-JUL-2020 02:19 PM | COMMENCEMENT CIVIL ACTION JURY | MONGELUZZI, ROBERT J | | 27-JUL-2020 03:06 PM |
| **Documents:** | Final Cover | | | |
| **Docket Entry:** | *none.* | | | |
| 27-JUL-2020 02:19 PM | PRAE TO ISSUE WRIT OF SUMMONS | MONGELUZZI, ROBERT J | | 27-JUL-2020 03:06 PM |

| Documents: | [Praecipe to Issue Writ of Summons 072720.pdf](#) | | | |
|---|---|---|---|---|
| **Docket Entry:** | PRAECIPE TO ISSUE WRIT OF SUMMONS FILED. WRIT OF SUMMONS ISSUED. | | | |

| | | | | |
|---|---|---|---|---|
| 27-JUL-2020 02:19 PM | JURY TRIAL PERFECTED | MONGELUZZI, ROBERT J | | 27-JUL-2020 03:06 PM |
| **Docket Entry:** | 12 JURORS REQUESTED. | | | |

| | | | | |
|---|---|---|---|---|
| 27-JUL-2020 02:19 PM | WAITING TO LIST CASE MGMT CONF | MONGELUZZI, ROBERT J | | 27-JUL-2020 03:06 PM |
| **Docket Entry:** | *none.* | | | |

| | | | | |
|---|---|---|---|---|
| 28-JUL-2020 09:06 AM | ENTRY OF APPEARANCE-CO COUNSEL | GOODMAN, JEFFREY P | | 28-JUL-2020 09:06 AM |
| **Documents:** | [EOA JPG.pdf](#) [EOA SW.pdf](#) [EOA JW.pdf](#) | | | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF JASON S WEISS, JEFFREY P GOODMAN AND STEVEN G WIGRIZER AS CO-COUNSEL FILED. (FILED ON BEHALF OF RENATA BARKER AND RENATA BARKER) | | | |

| | | | | |
|---|---|---|---|---|
| 21-AUG-2020 12:13 PM | AFFIDAVIT OF SERVICE FILED | GOODMAN, JEFFREY P | | 24-AUG-2020 09:25 AM |
| **Documents:** | [Aff of Svc Original Philly Holdings Inc.pdf](#) | | | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S WRIT OF SUMMONS UPON ORIGINAL PHILLY HOLDINGS INC BY PERSONAL SERVICE ON 06/04/2020 FILED. (FILED ON BEHALF OF RENATA BARKER AND RENATA BARKER) | | | |

| | | | | |
|---|---|---|---|---|
| 24-AUG-2020 | PRAECIPE TO REISSUE SUMMONS | GOODMAN, JEFFREY P | | 24-AUG-2020 |

| 09:46 AM | | | 11:32 AM |
|---|---|---|---|
| **Documents:** | PRAECIPE TO REISSUE WRIT OF SUMMONS 082420 .pdf | | |
| **Docket Entry:** | PREACIPE TO REISSUE WRIT OF SUMMONS FILED. WRIT REISSUED. (FILED ON BEHALF OF RENATA BARKER AND RENATA BARKER) | | |
| | | | |
| 04-SEP-2020 10:21 AM | SHERIFF'S SERVICE | GOODMAN, JEFFREY P | 04-SEP-2020 10:21 AM |
| **Documents:** | Aff of Svc_Tyson Foods Inc.pdf | | |
| **Docket Entry:** | DEPUTIZED SERVICE OF PLAINTIFF'S WRIT OF SUMMONS UPON TYSON FOODS INC BY SHERIFF OF DAUPHIN COUNTY ON 08/28/2020. (FILED ON BEHALF OF RENATA BARKER AND RENATA BARKER) | | |
| | | | |
| 23-SEP-2020 08:58 AM | PRAECIPE TO REISSUE SUMMONS | GOODMAN, JEFFREY P | 23-SEP-2020 11:37 AM |
| **Documents:** | Praecipe to Reissue Writ of Summons 092320.pdf | | |
| **Docket Entry:** | PREACIPE TO REISSUE WRIT OF SUMMONS FILED. WRIT REISSUED. (FILED ON BEHALF OF RENATA BARKER AND RENATA BARKER) | | |
| | | | |
| 28-SEP-2020 02:25 PM | AFFIDAVIT OF SERVICE FILED | GOODMAN, JEFFREY P | 28-SEP-2020 02:30 PM |
| **Documents:** | Aff of Svc_The Original Philly Steak, Inc dba Original Philly Cheesesteak Co.pdf | | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S WRIT OF SUMMONS UPON ORIGINAL PHILLY STEAK INC BY PERSONAL SERVICE ON 09/22/2020 FILED. (FILED ON BEHALF OF RENATA BARKER AND RENATA BARKER) | | |
| | | | |
| 16-DEC-2020 11:36 AM | COMPLAINT FILED NOTICE GIVEN | MONGELUZZI, ROBERT J | 17-DEC-2020 10:42 AM |
| **Documents:** | Complaint 121620.pdf<br>VERIFICATION_Signed.pdf | | |
| **Docket** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH | | |

| Entry: | RULE 1018.1 FILED. (FILED ON BEHALF OF RENATA BARKER AND RENATA BARKER) | | | |
|---|---|---|---|---|
| | | | | |
| 17-DEC-2020 02:29 PM | ENTRY OF APPEARANCE | CATTO, WILLIAM H | | 17-DEC-2020 02:32 PM |
| Documents: | [2020.12.17 EOA WC and EL.pdf](#) | | | |
| Docket Entry: | ENTRY OF APPEARANCE OF WILLIAM H CATTO AND ERIN E LAMB FILED. (FILED ON BEHALF OF ORIGINAL PHILLY HOLDINGS INC, ORIGINAL PHILLY STEAK INC AND TYSON FOODS INC) | | | |
| | | | | |
| 17-DEC-2020 02:29 PM | JURY TRIAL PERFECTED | CATTO, WILLIAM H | | 17-DEC-2020 02:32 PM |
| Docket Entry: | 12 JURORS REQUESTED. | | | |
| | | | | |
| 22-DEC-2020 02:47 PM | LISTED FOR CASE MGMT CONF | | | 22-DEC-2020 02:47 PM |
| Docket Entry: | *none.* | | | |
| | | | | |
| 24-DEC-2020 12:30 AM | NOTICE GIVEN | | | 24-DEC-2020 12:30 AM |
| Docket Entry: | *none.* | | | |
| | | | | |
| 05-JAN-2021 03:17 PM | CASE MGMT CONFERENCE COMPLETED | SULLIVAN, JOAN | | 05-JAN-2021 03:17 PM |
| Docket Entry: | *none.* | | | |
| | | | | |
| 05-JAN-2021 | CASE MANAGEMENT ORDER ISSUED | | | 05-JAN-2021 |

| 03:17 PM | | | | 03:17 PM |
|---|---|---|---|---|
| **Documents:** | CMOIS_18.pdf | | | |
| **Docket Entry:** | CASE MANAGEMENT ORDER COMPLEX TRACK - AND NOW, 05-JAN-2021, it is Ordered that: 1. The case management and time standards adopted for complex track cases shall be applicable to this case and are hereby incorporated into this Order. 2. All discovery on the above matter shall be completed not later than 02-MAY-2022. 3. Plaintiff shall identify and submit curriculum vitae and expert reports of all expert witnesses intended to testify at trial to all other parties not later than 06-JUN-2022. 4. Defendant and any additional defendants shall identify and submit curriculum vitae and expert reports of all expert witnesses intended to testify at trial not later than 04-JUL-2022. 5. All pre-trial motions shall be filed not later than 04-JUL-2022. 6. A settlement conference may be scheduled at any time after 01-AUG-2022. Prior to the settlement conference all counsel shall serve all opposing counsel and file a settlement memorandum containing the following: (a) A concise summary of the nature of the case if plaintiff or of the defense if defendant or additional defendant; (b) A statement by the plaintiff or all damages accumulated, including an itemization of injuries and all special damages claimed by categories and amount;(c) Defendant shall identify all applicable insurance carriers, together with applicable limits of liability. 7. A pre-trial conference will be scheduled any time after 03-OCT-2022. Fifteen days prior to pre-trial conference, all counsel shall serve all opposing counsel and file a pre-trial memorandum containing the following:(a) A concise summary of the nature of the case if plaintiff or the defense if defendant or additional defendant;(b) A list of all witnesses who may be called to testify at trial by name and address. Counsel should expect witnesses not listed to be precluded from testifying at trial;(c) A list of all exhibits the party intends to offer into evidence. All exhibits shall be pre-numbered and shall be exchanged among counsel prior to the conference. Counsel should expect any exhibit not listed to be precluded at trial;(d) Plaintiff shall list an itemization of injuries or damages sustained together with all special damages claimed by category and amount. This list shall include as appropriate, computations of all past lost earnings and future lost earning capacity or medical expenses together with any other unliquidated damages claimed; and (e) Defendant shall state its position regarding damages and shall identify all applicable insurance carriers, together with applicable limits of liability;(f) Each counsel shall provide an estimate of the anticipated length of trial. 8. It is expected that the case will be ready for trial 07-NOV-2022, and counsel should anticipate trial to begin expeditiously thereafter. 9. All counsel are under a continuing obligation and are hereby ordered to serve a copy of this order upon all unrepresented parties and upon all counsel entering an appearance subsequent to the entry of this order. ...BY THE COURT: ARNOLD NEW, J. | | | |
| 05-JAN-2021 03:17 PM | LISTED FOR SETTLEMENT CONF | | | 05-JAN-2021 03:17 PM |
| **Docket Entry:** | *none.* | | | |
| 05-JAN-2021 03:17 PM | LISTED FOR PRE-TRIAL CONF | | | 05-JAN-2021 03:17 PM |

| **Docket Entry:** | *none.* | | | |
|---|---|---|---|---|
| | | | | |
| 05-JAN-2021 03:17 PM | LISTED FOR TRIAL | | | 05-JAN-2021 03:17 PM |
| **Docket Entry:** | *none.* | | | |
| | | | | |
| 05-JAN-2021 03:17 PM | NOTICE GIVEN UNDER RULE 236 | | | 06-JAN-2021 09:17 AM |
| **Docket Entry:** | NOTICE GIVEN ON 06-JAN-2021 OF CASE MANAGEMENT ORDER ISSUED ENTERED ON 05-JAN-2021. | | | |

▶ Case Description   ▶ Related Cases   ▶ Event Schedule   ▶ Case Parties   ▶ Docket Entries

E-Filing System        Search Home

**SALTZ MONGELUZZI & BENDESKY P.C.**
BY:    ROBERT J. MONGELUZZI/STEVEN G. WIGRIZER
        JEFFREY P. GOODMAN/JASON S. WEISS
Identification No.: 36283/30396/309433/310446
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282



**ATTORNEYS FOR PLAINTIFF**

| | |
|---|---|
| **RENATA BARKER, Individually and as the Personal Representative of the Estate of BRIAN K. BARKER, Deceased**<br>215 Parkdale Road<br>Philadelphia, PA 19154<br><br>*Plaintiff*<br><br>v.<br><br>**TYSON FOODS, INC.**<br>c/o CT Corporation System<br>600 North 2nd Street, Suite 401<br>Harrisburg, PA 17101<br><br>*And*<br><br>**THE ORIGINAL PHILLY STEAK, INC.**<br>**d/b/a Original Philly Cheesesteak Co.**<br>1801 Market Street, Suite 800<br>Philadelphia, PA 19103<br><br>*And*<br><br>**ORIGINAL PHILLY HOLDINGS, INC.**<br>**d/b/a Original Philly Cheesesteak Co.**<br>520 E Hunting Park Avenue<br>Philadelphia, PA 19124<br><br><br>***Defendants*** | **PHILADELPHIA COUNTY**<br>**COURT OF COMMON PLEAS**<br>**LAW DIVISION**<br><br><br><br>**JULY TERM, 2020**<br><br><br><br><br>**JURY OF 12 DEMANDED** |

## PRAECIPE TO ISSUE WRIT OF SUMMONS

TO THE PROTHONOTARY:

Kindly issue a Writ of Summons in the above-captioned matter.

**SALTZ MONGELUZZI & BENDESKY, P.C.**


BY: */s/ Robert J. Mongeluzzi*

ROBERT J. MONGELUZZI
STEVEN G. WIGRIZER
JEFFREY P. GOODMAN
JASON S. WEISS
*Attorneys for Plaintiff*

Case ID: 200701751

C.P.97

# Commonwealth of Pennsylvania
## CITY AND COUNTY OF PHILADELPHIA

SUMMONS
*CITACION*

RENATA BARKER, Individually and as the
Personal Representative of the Estate of
BRIAN K. BARKER, Deceased

COURT OF COMMON PLEAS

JULY_____ Term, 20_20__

No. _____

*vs.*

TYSON FOODS, INC.; THE ORIGINAL
PHILLY STEAK, INC.; ORIGINAL PHILLY
HOLDINGS, INC.

To(1)

TYSON FOODS, INC.

THE ORIGINAL PHILLY STEAK,
INC. d/b/a ORIGINAL PHILLY
CHEESESTEAK CO.

ORIGINAL PHILLY HOLDINGS,
INC. d/b/a ORIGINAL PHILLY
CHEESESTEAK CO.

You are notified that the Plaintiff(2)
*Usted esta avisado que el demandante(2)*

RENATA BARKER, Individually and as the Personal Representative of the Estate of BRIAN K. BARKER, Deceased

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*



JOSEPH H. EVERS
*Prothonotary*



By _____

Date _____

(1) Name(s) of Defendant(s)
(2) Name(s) of Plaintiff(s)

10-208 (Rev. 6/00)

Case ID: 200701751

**COURT OF COMMON PLEAS**

JULY _____ **Term, 20** 20 **No.** _____

RENATA BARKER, Individually and as the
Personal Representative of the Estate of BRIAN K.
BARKER, Deceased

**vs.**

TYSON FOODS, INC.; THE ORIGINAL PHILLY
STEAK, INC.; ORIGINAL PHILLY HOLDINGS,
INC.

**SUMMONS**

Case ID: 200701751

**SALTZ MONGELUZZI & BENDESKY P.C.**
BY:    ROBERT J. MONGELUZZI/STEVEN G. WIGRIZER
JEFFREY P. GOODMAN/JASON S. WEISS
Identification No.: 36283/30396/309433/310446
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282

*Filed and Attested by the Office of Judicial Records 24 AUG 2020 09:46 am M. RUSSO*

**ATTORNEYS FOR PLAINTIFF**

| | |
|---|---|
| **RENATA BARKER, Individually and as the Personal Representative of the Estate of BRIAN K. BARKER, Deceased**<br><br>*Plaintiff*<br><br>**v.**<br><br>**TYSON FOODS, INC., THE ORIGINAL PHILLY STEAK, INC.** *And* **ORIGINAL PHILLY HOLDINGS, INC.**<br><br>*Defendants* | **PHILADELPHIA COUNTY COURT OF COMMON PLEAS LAW DIVISION**<br><br>**JULY TERM, 2020**<br><br>**NO.:  1751** |

<u>**PRAECIPE TO REISSUE WRIT OF SUMMONS**</u>

**TO THE PROTHONOTARY:**

Kindly reissue a Writ of Summons in the above-captioned matter.

**SALTZ MONGELUZZI & BENDESKY, P.C.**

BY:    <u>*/s/ Jeffrey P. Goodman.*</u>
         ROBERT J. MONGELUZZI
         STEVEN G. WIGRIZER
         JEFFREY P. GOODMAN
         JASON S. WEISS
         *Attorneys for Plaintiff*

Dated: <u>August 24, 2020</u>

**SALTZ MONGELUZZI & BENDESKY P.C.**
BY:     ROBERT J. MONGELUZZI/STEVEN G. WIGRIZER
        JEFFREY P. GOODMAN/JASON S. WEISS
Identification No.: 36283/30396/309433/310446
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282



**ATTORNEYS FOR PLAINTIFF**

---

| | |
|---|---|
| **RENATA BARKER, Individually and as the Personal Representative of the Estate of BRIAN K. BARKER, Deceased**<br>215 Parkdale Road<br>Philadelphia, PA 19154<br><br>*Plaintiff*<br><br>v.<br><br>**TYSON FOODS, INC.**<br>c/o CT Corporation System<br>600 North 2nd Street, Suite 401<br>Harrisburg, PA 17101<br><br>*And*<br><br>**THE ORIGINAL PHILLY STEAK, INC.**<br>**d/b/a Original Philly Cheesesteak Co.**<br>1801 Market Street, Suite 800<br>Philadelphia, PA 19103<br><br>*And*<br><br>**ORIGINAL PHILLY HOLDINGS, INC.**<br>**d/b/a Original Philly Cheesesteak Co.**<br>520 E Hunting Park Avenue<br>Philadelphia, PA 19124<br><br><br>*Defendants* | **PHILADELPHIA COUNTY**<br>**COURT OF COMMON PLEAS**<br>**LAW DIVISION**<br><br><br>**JULY TERM, 2020**<br><br><br><br>**JURY OF 12 DEMANDED** |

## PRAECIPE TO ISSUE WRIT OF SUMMONS

TO THE PROTHONOTARY:

Kindly issue a Writ of Summons in the above-captioned matter.

**SALTZ MONGELUZZI & BENDESKY, P.C.**


BY: _/s/ Robert J. Mongeluzzi_
         ROBERT J. MONGELUZZI
         STEVEN G. WIGRIZER
         JEFFREY P. GOODMAN
         JASON S. WEISS
         _Attorneys for Plaintiff_

Case ID: 200701751

C.P.97

# Commonwealth of Pennsylvania

## CITY AND COUNTY OF PHILADELPHIA

SUMMONS
*CITACION*

RENATA BARKER, Individually and as the
Personal Representative of the Estate of
BRIAN K. BARKER, Deceased

COURT OF COMMON PLEAS

JULY _____ Term, 20__20__

No. _____

*vs.*

TYSON FOODS, INC.; THE ORIGINAL
PHILLY STEAK, INC.; ORIGINAL PHILLY
HOLDINGS, INC.

To<sup>(1)</sup>

| TYSON FOODS, INC. | THE ORIGINAL PHILLY STEAK, INC. d/b/a ORIGINAL PHILLY CHEESESTEAK CO. | ORIGINAL PHILLY HOLDINGS, INC. d/b/a ORIGINAL PHILLY CHEESESTEAK CO. |

You are notified that the Plaintiff<sup>(2)</sup>
*Usted esta avisado que el demandante*<sup>(2)</sup>

 RENATA BARKER, Individually and as the Personal Representative of the Estate of BRIAN K. BARKER, Deceased

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*



JOSEPH H. EVERS
*Prothonotary*

By _____



Date _____

<sup>(1)</sup> Name(s) of Defendant(s)
<sup>(2)</sup> Name(s) of Plaintiff(s)

10-208 (Rev. 6/00)

Case ID: 200701751

**COURT OF COMMON PLEAS**

RENATA BARKER, Individually and as the
Personal Representative of the Estate of BRIAN K.
BARKER, Deceased

JULY _____ Term, 20 20 _____ No. _____

vs.

TYSON FOODS, INC.; THE ORIGINAL PHILLY
STEAK, INC.; ORIGINAL PHILLY HOLDINGS,
INC.

**SUMMONS**

Case ID: 200701751

**SALTZ MONGELUZZI & BENDESKY P.C.**
BY:    ROBERT J. MONGELUZZI/STEVEN G. WIGRIZER
JEFFREY P. GOODMAN/JASON S. WEISS
Identification No.: 36283/30396/309433/310446
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282

*Filed and Attested by the*
*Office of Judicial Records*
*23 SEP 2020 08:58 am*
*M. RUSSO*

**ATTORNEYS FOR PLAINTIFF**

| | |
|---|---|
| **RENATA BARKER, Individually and as the Personal Representative of the Estate of BRIAN K. BARKER, Deceased**<br><br>*Plaintiff*<br><br>**v.**<br><br>**TYSON FOODS, INC., THE ORIGINAL PHILLY STEAK, INC.** *And* **ORIGINAL PHILLY HOLDINGS, INC.**<br><br>*Defendants* | **PHILADELPHIA COUNTY COURT OF COMMON PLEAS LAW DIVISION**<br><br>**JULY TERM, 2020**<br><br>**NO.:  1751** |

<u>**PRAECIPE TO REISSUE WRIT OF SUMMONS**</u>

**TO THE PROTHONOTARY:**

Kindly reissue a Writ of Summons in the above-captioned matter.

**SALTZ MONGELUZZI & BENDESKY, P.C.**

BY:  <u>  */s/ Jeffrey P. Goodman.*  </u>
ROBERT J. MONGELUZZI
STEVEN G. WIGRIZER
JEFFREY P. GOODMAN
JASON S. WEISS
*Attorneys for Plaintiff*

Dated: <u>September 23, 2020</u>

**SALTZ MONGELUZZI & BENDESKY P.C.**
BY:    ROBERT J. MONGELUZZI/STEVEN G. WIGRIZER
         JEFFREY P. GOODMAN/JASON S. WEISS
Identification No.: 36283/30396/309433/310446
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282



**ATTORNEYS FOR PLAINTIFF**

| | |
|---|---|
| **RENATA BARKER, Individually and as the Personal Representative of the Estate of BRIAN K. BARKER, Deceased** <br> 215 Parkdale Road <br> Philadelphia, PA 19154 <br><br> *Plaintiff* <br><br> **v.** <br><br> **TYSON FOODS, INC.** <br> c/o CT Corporation System <br> 600 North 2nd Street, Suite 401 <br> Harrisburg, PA 17101 <br><br> *And* <br><br> **THE ORIGINAL PHILLY STEAK, INC.** <br> **d/b/a Original Philly Cheesesteak Co.** <br> 1801 Market Street, Suite 800 <br> Philadelphia, PA 19103 <br><br> *And* <br><br> **ORIGINAL PHILLY HOLDINGS, INC.** <br> **d/b/a Original Philly Cheesesteak Co.** <br> 520 E Hunting Park Avenue <br> Philadelphia, PA 19124 <br><br><br> ***Defendants*** | **PHILADELPHIA COUNTY COURT OF COMMON PLEAS LAW DIVISION** <br><br><br> **JULY TERM, 2020** <br><br><br><br> **JURY OF 12 DEMANDED** |

## PRAECIPE TO ISSUE WRIT OF SUMMONS

TO THE PROTHONOTARY:

    Kindly issue a Writ of Summons in the above-captioned matter.

**SALTZ MONGELUZZI & BENDESKY, P.C.**

BY: _/s/ Robert J. Mongeluzzi_
        ROBERT J. MONGELUZZI
        STEVEN G. WIGRIZER
        JEFFREY P. GOODMAN
        JASON S. WEISS
        *Attorneys for Plaintiff*

C.P.97

# Commonwealth of Pennsylvania

### CITY AND COUNTY OF PHILADELPHIA

SUMMONS
*CITACION*

RENATA BARKER, Individually and as the
Personal Representative of the Estate of
BRIAN K. BARKER, Deceased

COURT OF COMMON PLEAS

JULY _____ Term, 20 20

No. _____

*vs.*

TYSON FOODS, INC.; THE ORIGINAL
PHILLY STEAK, INC.; ORIGINAL PHILLY
HOLDINGS, INC.

To (1)

TYSON FOODS, INC.

THE ORIGINAL PHILLY STEAK,
INC. d/b/a ORIGINAL PHILLY
CHEESESTEAK CO.

ORIGINAL PHILLY HOLDINGS,
INC. d/b/a ORIGINAL PHILLY
CHEESESTEAK CO.

You are notified that the Plaintiff (2)
*Usted esta avisado que el demandante* (2)

RENATA BARKER, Individually and as the Personal Representative of the Estate of BRIAN K. BARKER, Deceased

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*



JOSEPH H. EVERS
*Prothonotary*



By _____

Date _____

(1) Name(s) of Defendant(s)
(2) Name(s) of Plaintiff(s)

10-208 (Rev. 6/00)

Case ID: 200701751

**COURT OF COMMON PLEAS**

_JULY_ _____ **Term, 20** 20 ____ **No.** _____

RENATA BARKER, Individually and as the
Personal Representative of the Estate of BRIAN K.
BARKER, Deceased

vs.

TYSON FOODS, INC.; THE ORIGINAL PHILLY
STEAK, INC.; ORIGINAL PHILLY HOLDINGS,
INC.

**SUMMONS**

Case ID: 200701751

**SALTZ MONGELUZZI & BENDESKY P.C.**
BY:    ROBERT J. MONGELUZZI/STEVEN G. WIGRIZER
      JEFFREY P. GOODMAN/JASON S. WEISS

Identification No.: 36283/30396/309433/310446

1650 Market Street, 52nd Floor

Philadelphia, PA 19103

(215) 496-8282

This is a Major Jury Case
Jury Trial is Demanded.
Assessment of Damages
Required.

*Filed and Attested by the
Office of Judicial Records
07 JUL 2020 11:36 am
M. RUSSO*

**ATTORNEYS FOR PLAINTIFF**

---

**RENATA BARKER, Administratrix of the
Estate of BRIAN K. BARKER, Deceased,
and in her own right,**
215 Parkdale Road
Philadelphia, PA 19154

*Plaintiff*

**v.**

**TYSON FOODS, INC.**
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

*[SEE ATTACHED RIDER]*

**PHILADELPHIA COUNTY
COURT OF COMMON PLEAS
LAW DIVISION**


**JULY TERM, 2020**

**NO.: 1751**

---

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**PHILADELPHIA BAR ASSOCIATION**
LAWYER REFERRAL AND INFORMATION SERVICE
1101 MARKET STREET
PHILADELPHIA, PA 19107
TELEPHONE: (215) 238-6333

### AVISO

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación.  Hace falta asentar una comparecía escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomará midas y puede continuar la demanda en contra suya sin previo aviso o notificación.  Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.
LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATA-MENTE.  SI NO TIENE ABOGADO O SINO TIENE EL DI-NERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEPHONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUDE CONSEGUIR ASISTENCIA LEGAL.

**ASOCIACIÓN DE LICENCIADOS DE FILADELFIA**
SERVICIO DE REFERENCIA E INFORMACIÓN LEGAL
1101 CALLE DE MERCADO
FILADELFIA, PA 19107
TELÉFONO: (215) 238-6333

## RIDER

**THE ORIGINAL PHILLY STEAK, INC.** d/b/a   :
**ORIGINAL PHILLY CHEESESTEAK CO.**
520 E. Hunting Park Avenue               :
Philadelphia, PA 19124

                    and                   :

**ORIGINAL PHILLY HOLDINGS** d/b/a   :
**ORIGINAL PHILLY CHEESESTEAK CO.**
520 E. Hunting Park Avenue               :
Philadelphia, PA 19124

                            *Defendants.*     :

---

## COMPLAINT – CIVIL ACTION

### *Introduction*

1.    This wrongful death and survival action concerns the negligent, reckless, and outrageous conduct of Tyson Foods, one of America's largest meat processing companies, and its choice to pursue profits over safety during a global pandemic.

2.    On April 23, 2020, Brian Barker died of respiratory failure caused by the pandemic virus, COVID-19.

3.    At the time of his death, Mr. Barker was a meatpacking supervisor at the Original Philly Cheesesteak Co. meat processing plant in Philadelphia, Pennsylvania (the "Original Philly Plant"). The Plant was owned, supervised, and controlled by Defendants Tyson Foods, Inc., The Original Philly Steak, Inc., and Original Philly Holdings, Inc. (hereinafter the "Tyson Defendants").

2

 

4.      Mr. Barker was just three years from retirement when he was infected with COVID-19 while working at the Original Philly Plant.

5.      Despite the fact that Mr. Barker was at high risk for contracting COVID-19—he was over 60, had diabetes, and had high blood pressure—the Defendants ordered Mr. Barker to take the temperatures of employees coming into the Plant on April 2, 2020.

6.      April 2, 2020 would be Mr. Barker's last day at the plant—predictably he tested positive for COVID-19 just five days later, on April 7, 2020.

7.      Tragically, Mr. Barker succumbed to the infection and died on April 23, 2020.

8.      Mr. Barker's death was the preventable result of the Defendants' decisions to ignore worker safety.

9.      The Defendants ignored federal guidance and put plant workers in the crosshairs of a global pandemic.

10.     Despite the known risks regarding COVID-19, prior to shutting down the Original Philly Plant on April 3, 2020, the Tyson Defendants: (1) failed to provide sufficient personal protective equipment; (2) forced workers to work in close proximity; (3) forced workers to use

3

Case ID: 200701751

cramped and crowded work areas, break areas, restrooms, and hallways; (4) failed to warn of the dangers associated with use of public water fountains and/or properly disable public water fountains despite the risk of transmission of COVID-19; (5) failed to provide alternative potable water despite the risk of transmission of COVID-19 through the use of water fountains; and (6) failed to properly provide testing and monitoring for individuals who have may have been exposed to the virus that causes COVID-19.

11.     Instead of putting safety first, the Defendants increased production at the Original Philly Plant during March and April of 2020, adding more shifts and more workers at the Plant to capitalize on increased demand caused by public panic purchases of meat and frozen products.

12.     During this critical timeframe in early April of 2020, Mr. Barker contracted COVID-19 at the Original Philly Plant because the Defendants inexplicably failed to take proper safety precautions to protect workers.

13.     By keeping the Original Philly Plant open without providing the proper and recommended safety precautions, the Defendants intentionally misrepresented the safety of the facility.

14.     By choosing profits over safety, the Defendants demonstrated a reckless disregard to the rights and safety of others, including Brian Barker.

## FACTS COMMON TO ALL COUNTS

### *A Global Pandemic*

15.     COVID-19 is an infectious respiratory disease which is caused by a virus known as SARS-CoV-2, or "the novel coronavirus."

16.     The virus which causes COVID-19 is highly contagious.

17.     The virus spreads mainly person-to-person, primarily through coughs or sneezes from an infected person in close proximity to another.

4

18.     The virus is especially dangerous because it can be spread by people who are asymptomatic or pre-symptomatic.

19.     For these reasons, the preferred mechanism to combat the virus has been widespread "stay-at-home" orders to prevent being exposed to the novel coronavirus.

20.     On January 21, 2020, the United States reported its first case of the novel coronavirus.

21.     By this time, it was widely reported that the virus had already spread across Asia and Europe.

22.     On January 30, 2020, the United States reported its first case of COVID-19 acquired via community spread.

23.     In this context, it has been stated that "community spread" means "that people have been infected with the virus in an area, including some who are not sure how or where they became infected."

24.     On January 31, 2020, the World Health Organization ("WHO") declared COVID-19 a "public health emergency of international concern."

25.     On March 9, 2020, with over 500 COVID-19 infections in the United States, the CDC published federal guidelines for workers.

26.     These guidelines included recommendations for social distancing of at least 6 feet, and the use of Personal Protective Equipment ("PPE") for workers.

27.     The same day, March 9, 2020, OSHA released its own guidelines, recommending that companies should offer surgical masks or respirators to workers who could be infected with COVID-19, especially those that worked in close quarters:

5

Case ID: 200701751

> **Personal Protective Equipment (PPE)**
>
> Employers are obligated to provide their workers with PPE needed to keep them safe while performing their jobs. The types of PPE required during a COVID-19 outbreak will be based on the risk of being infected with SARS-CoV-2 while working and job tasks that may lead to exposure.

*OSHA "Guidance on Preparing Workplaces for COVID-19," March 9, 2020*

28.     Despite this guidance, the Defendants did not obtain masks or other PPE for their workers until after Mr. Barker became infected with COVID-19 at the Plant, on April 2, 2020, when there were already over 240,000 confirmed COVID-19 infections in the United States, and 5,794 confirmed deaths.

29.     Despite the clear danger that COVID-19 posed for its workers, the Defendants did not mandate the use of masks and/or PPE for their workers until after Mr. Barker became infected with COVID-19 at the Plant.

30.     Despite the clear danger that COVID-19 posed for its workers, Defendants maintained their 'work-while-sick' policy, which they had established years prior to the COVID-19 pandemic to strike fear into employees who had fallen ill and needed time off to recuperate.

31.     Defendants enforced this work-while-sick policy by creating a points system: arbitrarily deducting points for demerits, including taking time off, regardless of the fact that the employee was sick.

32.     Defendants perpetuated this work-while-sick policy by refusing to give workers paid sick leave.

33.     At the time of this filing, there are at least 10 million confirmed COVID-19 cases in the United States, over 240,000 of which have been fatal.  Brian Barker is but one of those 240,000 who have succumbed to this horrific illness.

Case ID: 200701751

*Meat Processing Plants – A Melting Pot for the Spread of Infection*

34.     Meat processing plants are known to be "notoriously dangerous."

35.     Meatpacking plants present unique safety issues because of the proximity within which employees work ("elbow-to-elbow") using cutting tools and in a challenging environment.

36.     In 2009, the spread of the H1N1 virus put meat processing plants on notice of the dangerous conditions that the spread of airborne virus posed to their workers.

37.     As recently as 2016, regulations were promulgated to promote worker's safety to protect against airborne illness at the plants.

38.     The enhanced coverage of meat processing plants that has occurred as a result of the COVID-19 pandemic highlighted the pre-existing dangerous conditions which workers were exposed to at these plants.

39.     One recent news report quotes plant workers describing themselves as "modern slaves."

40.     Others have been quoted as stating that "the workers are being sacrificed" in recent media coverage.

41.     Meat processing plants pose specific challenges regarding physical distancing of workers that the Defendants needed to assess and accommodate before allowing work to continue.

42.     Meat processing plants, and the above-named Defendants, were on notice of how at-risk their workers would be in the face of a pandemic like that currently gripping the world.

43.     During the Bush administration, federal agencies informed meatpacking companies that, in the case of a global pandemic, as many as 40% of their workers could be felled by illness or quarantine.

Case ID: 200701751

44.     In 2009, the Labor Department also warned that businesses, like meatpacking plants, with "high population density work environments" should stockpile PPE like masks sufficient for each worker to have two masks per day for 120 days.  Tyson failed to stockpile masks anywhere close to this recommended standard.

45.     But a 2015 federal report indicated that the food and agriculture industry, including the meatpacking industry, had "no overarching plan" to deal with a global pandemic.

46.     In fact, industry insiders report that the meatpacking industry, including Tyson, rejected offers for pandemic emergency plans and leadership training sessions, throwing caution to the wind and risking the lives of their workers, despite the known fatal risk that a global pandemic posed to those like Mr. Barker.

47.     These failures were compounded once the COVID-19 pandemic struck the United States: Tyson did not bother to contact local health agencies about protecting its workers and emergency planning until mid-March, 2020, at which point workers were already becoming infected.

48.     Reports from government health officials make clear that due to strict attendance requirements at meatpacking plants, workers like Mr. Barker were either explicitly or implicitly encouraged to work while sick, leading to far wider spread infections.

49.     Recent research from University of Chicago's Booth School of Business indicates that "as many as one in 12 cases of Covid-19 in the early stage of the pandemic in the U.S. can be tied to outbreaks at meatpacking plants," an unsurprising figure given the Defendants' absolute lack of regard for worker safety or infection-resistance protocols.

50.     That number has steadily increased over time, and tragically, Brian Barker's death will not be the last.

8

*The Defendants*

51.     Defendants, Tyson Foods, Inc., The Original Philly Steak, Inc., and Original Philly Holdings, Inc., are herein collectively referred to as the "Tyson Defendants" and/or "Tyson".

52.     Tyson, a multinational corporation, is one of America's largest meat processors.

53.     Tyson products fill the shelves of grocery stores across the United States.

54.     Tyson Foods, Inc., The Original Philly Steak, Inc., and Original Philly Holdings, Inc. sell meat products under the brand name Original Philly Cheesesteak, and own, operate, and/or otherwise control the Original Philly Plant located at 520 E Hunting Park Avenue, Philadelphia, PA 19124.

55.     With such an important role in the food supply chain, safety should be of paramount concern to the Tyson Defendants.

56.     However, based upon publicly available information, Tyson has consistently placed profits over safety.

57.     Tyson Foods, Inc. failed to develop a safety strategy to protect workers at the plant level, instead placing the focus on driving profits with little care or attention paid to the safety of the workers in the plants, including at the Philadelphia location.

58.     In fact, public reporting indicates that Tyson plant managers across the country placed bets on the number of floor workers, like Mr. Barker, who they believed would become infected with the virus.  This revelation was unsurprising given the sheer number of COVID-19 infections that the Defendants were responsible for.

59.     As of June 2020, Tyson was responsible for over 7,100 COVID-19 infections of workers at its plants, along with at least 24 deaths.

9

Case ID: 200701751

***The Original Philly Plant***

60.     In 2016, Brian Barker started working at the Original Philly Plant in Philadelphia, PA, as a meatpacking supervisor.

61.     Mr. Barker was a 40-year veteran of the meatpacking industry.

62.     The Original Philly Plant has well over 100 workers and specializes in beef processing and packaging.

63.     Every day, workers report to the plant floor for work in close proximity and horrific conditions: extremes of temperature, volume, dampness, and hazardous footing.

64.     Workers stand only a few feet apart and, because of the volume of the machines at The Plant, are required to stand within inches of each other to communicate.   A typical meat packing and processing line is depicted below:



***The COVID-19 Pandemic in the United States***

65.     Based upon information and belief, the culture at the Original Philly Plant, and Tyson's no paid sick leave policy, resulted in workers arriving for their shifts while sick for fear of losing their jobs, or their paychecks.

Case ID: 200701751

66.     As discussed above, Defendants enforced and maintained this work-while-sick policy by employing a points system, deducting points from workers who needed to take sick leave, and refusing to give paid sick leave.

67.     Requests for sick leave were sometimes met by the Defendants with threats of termination.

68.     The March 9, 2020 OSHA guidance specifically instructed workplaces to send sick workers home:



*OSHA "Guidance on Preparing Workplaces for COVID-19," March 9, 2020*

69.     Despite the skyrocketing risk of COVID-19 infections for workers, the Tyson Defendants ignored the safety of workers and required them to report for duty each day in cramped conditions and without adequate PPE.

70.     Despite these known risks, the Tyson Defendants refused to close their plants or otherwise limit the number of workers reporting for duty each day.

71.     Instead, the Tyson Defendants actually increased the number of workers at the Original Philly Plant.

72.     The Tyson Defendants also implemented 'temperature checks' at the entrance to the facility—yet their attempts at safety were grossly inadequate and in fact increased the risk of harm to workers like Brian Barker.

Case ID: 200701751

73.     The Tyson Defendants instructed workers, including Mr. Barker, to scan the temperature of workers without equipping Mr. Barker or others with adequate PPE.

74.     The Tyson Defendants failed or refused to have workers take their own temperatures at home and before arriving to work, in order to reduce the risk of spreading COVID-19.

75.     The Tyson Defendants failed or refused to consider the health of workers at high risk for contracting COVID-19, and instead placed them on the front lines and in harm's way.

76.     The Tyson Defendants failed or refused to sanitize testing equipment.

77.     The Tyson Defendants failed or refused to sanitize the Original Philly Plant.

78.     The Tyson Defendants failed or refused to enforce mask wearing policies.

79.     The Tyson Defendants failed or refused to enforce social distancing policies.

80.     Based upon information and belief, workers were outspoken about the lack of safety equipment prior to the plant shutting down.

81.     Based upon information and belief, prior to Mr. Barker becoming infected with COVID-19 while at the Original Philly Plant, a co-worker/manager at the Plant became infected with COVID-19.

82.     Based upon information and belief, Defendants knew that co-worker/manager had become infected with COVID-19 and had interacted with other co-workers at the Original Philly Plant while infected.

83.     Based upon information and belief, Mr. Barker was twice required to deliver co-worker/manager employer-issued laptop to him, despite his having tested positive for COVID-19.

12

Case ID: 200701751

84.     Based upon information and belief, Defendants took no steps to warn or protect other workers at the Plant from the risk of COVID-19 infection spreading.

85.     Based upon information and belief, employees did complain about the lack of masks prior to the shutdown on April 3, 2020.

86.     Based upon information and belief, workers, including Plaintiff, complained about bringing COVID-19 home to their families before the shutdown.

### *COVID-19 Infections at all Tyson Plants*

87.     COVID-19 spread quickly through the Tyson Defendants' meat packing plants.

88.     Despite the clear and present danger the virus presented, the Tyson Defendants kept their facilities across the United States open or shuttered them only temporarily, or "idling" them, even after thousands of workers fell ill and others died.

89.     Based upon information and belief, the Tyson Defendants had a 'work while sick' policy.

90.     The Tyson Defendants did not require workers experiencing COVID-19 symptoms to report their illness to their superiors.

91.     The Tyson Defendants did not require these workers to self-quarantine at home, despite federal guidance to the contrary.

92.     The Tyson Defendants did not require or provide masks or other essential PPE to workers at their facilities.

93.     In March of 2020, Tyson disclosed to investors that "[t]he health and safety of our team members is our top priority," and that Tyson would be changing their corporate policy and finally compensating employees for sick time.

13

Case ID: 200701751

94.     These statements were false.  At the beginning of April, 2020, Tyson executives met with others in the meatpacking industry and created clear talking points for those in the industry: employees who failed to show up for work for fear of becoming infected with COVID-19 would not receive unemployment benefits and would not be given paid sick leave.

95.     Defendants' executives and others in the industry specifically emphasized that "being afraid of COVID-19 is not a reason to quit your job and you are not eligible for unemployment compensation if you do."

96.     Clearly, Tyson's disclosure and self-serving statements were just smoke and mirrors: as of mid-April, 2020, after Brian Barker had become infecting with COVID-19 at the Original Philly Plant, reports indicate that Tyson was *still* not offering paid sick leave to workers. Instead, Tyson offered only minimal disability payments.

97.     This despite the fact that Tyson's plants were experiencing rapid COVID-19 spread, and workers were falling sick and dying.

98.     In a demonstration of placing profits over safety, the Tyson Defendants ignored the health of their vulnerable workers and continued to discourage those experiencing symptoms to continue working.

99.     In a demonstration of placing profits over safety, the Tyson Defendants ignored the health of their vulnerable workers and did not shut any plants until it was too late, despite the overwhelming mountain of facts and hard evidence indicating that meat packing plants would be ravaged by COVID-19 infections.

100.    Tyson operates scores of meat plants nationwide.

101.    Tyson has experienced COVID-19 outbreaks at dozens of these plants, including: Philadelphia, Pennsylvania;  Storm Lake, Iowa;  Dakota City, Nebraska;  Waterloo, Iowa;

14

Portland, Maine; Madison, Nebraska; Logansport, Indiana; Robards, Kentucky; Pasco Washington; Columbus Junction, Iowa; Noel, Missouri; Benton County, Arkansas; Washington County, Arkansas.

102.    At Tyson's Arkansas plants, over 480 workers have tested positive for COVID-19.

103.    At Tyson's Missouri plants, over 370 workers have tested positive for COVID-19.

104.    At Tyson's Columbus Junction, Iowa plant, 522 workers tested positive for COVID-19.

105.    At most recent count, there have been 7,100 COVID-19 confirmed infections of workers at Tyson plants, along with at least 24 deaths.

### The Death of Brian Barker

106.    Based upon information and belief, up to and including April 2, 2020, workers at the Original Philly Plant were still not required to wear masks and/or other PPE, despite CDC and OSHA guidance to the contrary.

107.    Based upon information and belief, up to and including April 2, 2020, workers at the Original Philly Plant were still required to work within 6 feet of one another, despite CDC and OSHA guidance to the contrary.

108.    Based upon information and belief, up to and including April 2, 2020, workers at the Original Philly Plant were not required to report to their superiors if they were experiencing COVID-19 symptoms.

109.    Based upon information and belief, when Brian Barker last arrived for work at the Original Philly Plant on April 2, 2020, a number of workers at the Plant had already become infected.

15

Case ID: 200701751

110.    On April 2, 2020, the Defendants instructed Brian Barker to take the temperatures of his co-workers arriving at the plant, despite the fact that Brian was: over 60, had diabetes, and had high blood pressure.

111.    The Defendants failed to provide Brian Barker with any training whatsoever on how to safely perform temperature checks on co-workers, while still protecting himself.

112.    The Defendants failed to sanitize the testing equipment that they forced Brian Barker to use.

113.    The Defendants failed to provide Brian Barker with the necessary PPE to perform temperature checks on his potentially infected co-workers.

114.    On April 7, 2020, Brian Barker received a positive COVID-19 test—Brian Barker contracted COVID-19 while at the Original Philly Plant.

115.    Over the next two weeks, Brian Barker's condition continued to worsen and breathing became nearly impossible.

116.    On April 23, 2020, Brian Barker's life was taken when he succumbed to the infection.

117.    An autopsy report confirmed that Brian Barker died from respiratory complications related to COVID-19.

118.    Mr. Barker's death was the predictable and preventable result of the Tyson Defendants' failures to consider the safety of their workers.

119.    The Defendants knew, or in the exercise of a reasonable degree of care, should have known that if OSHA and CDC guidance were not followed, workers would become infected with and could succumb to COVID-19.

120.    Instead, the Tyson Defendants placed profits over safety.

Case ID: 200701751

121.    As a result of the Tyson Defendants' outrageous, reckless, and grossly negligent actions which demonstrated a total disregard for the workers' safety, Brian Barker became infected with COVID-19 at the Original Philly Plant.

122.    Mr. Barker died only days after leaving the Original Philly Plant for the last time.

123.    After Mr. Barker's confirmed infection, the Tyson Defendants failed or refused to inform other workers at the Original Philly Plant that they had potentially been exposed to COVID-19.

124.    The Tyson Defendants' actions demonstrated a knowing willingness to sacrifice the health of Brian Barker and others for its own corporate greed.

### *The Parties*

125.    Plaintiff, Renata Barker, is an adult individual and a citizen of the Commonwealth of Pennsylvania residing at the above captioned address.

126.    Renata Barker brings this suit as the Administratrix of the Estate of Brian K. Barker, on her own behalf and on behalf of all statutory beneficiaries.

127.    At all relevant times Brian Barker was an adult citizen of the Commonwealth of Pennsylvania, residing in Philadelphia County.

128.    Defendant, Tyson Foods, Inc., is a corporation organized and existing under the laws of Delaware, with an address for service at the above captioned address.

129.    At all times relevant to this cause of action, Tyson Foods, Inc. was engaged in business within the Commonwealth of Pennsylvania on a regular, systematic, continuous, and substantial basis.

130.    At all times relevant to this cause of action, Tyson Foods, Inc. regularly conducted business in Philadelphia County.

17

131.    At all relevant times, Tyson Foods, Inc. was acting by and through its agents, servants and/or employees, who were acting within the course and scope of their agency, service, and employment with Tyson Foods, Inc.

132.    At all relevant times, Tyson Foods, Inc. was registered to do business in Pennsylvania:

| | Date: 07/24/2020 |
|---|---|

**Business Name History**

| Name | Name Type |
|---|---|
| TYSON FOODS, INC. | Current Name |

| **Business Entity Details** | | **Officers** | |
|---|---|---|---|
| Name | TYSON FOODS, INC. | Name | L WAYNE BRITT |
| Entity Number | 2032110 | Title | TREASURER |
| Entity Type | Business Corporation | Address | 2210 OAKLAWN SPRINGDALE AR 72765 |
| Status | Active | | |
| Citizenship | Foreign | Name | LELAND E TOLLETT |
| Entity Creation Date | 06/24/1991 | Title | PRESIDENT |
| Effective Date | 06/24/1991 | Address | 2210 OAKLAWN SPRINGDALE AR 72765 |
| State Of Inc | DE | | |
| Address | %CT Corporation System Philadelphia | | |

133.    Defendant, The Original Philly Steak, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at the above captioned address.

134.    At all times relevant to this cause of action, The Original Philly Steak, Inc. was engaged in business within the Commonwealth of Pennsylvania on a regular, systematic, continuous, and substantial basis.

135.    At all times relevant to this cause of action, The Original Philly Steak, Inc. regularly conducted business in Philadelphia County.

Case ID: 200701751

136.    At all relevant times, The Original Philly Steak, Inc. was acting by and through its agents, servants and/or employees, who were acting within the course and scope of their agency, service, and employment with The Original Philly Steak, Inc.

137.    Defendant, Original Philly Holdings, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with an address for service at the above captioned address.

138.    At all times relevant to this cause of action, Original Philly Holdings, Inc. was engaged in business within the Commonwealth of Pennsylvania on a regular, systematic, continuous, and substantial basis.

139.    At all times relevant to this cause of action, Original Philly Holdings, Inc. regularly conducted business in Philadelphia County.

140.    At all relevant times, Original Philly Holdings, Inc. was acting by and through its agents, servants and/or employees, who were acting within the course and scope of their agency, service, and employment with Original Philly Holdings, Inc.

141.    Upon information and belief, Defendant Original Philly Holdings, Inc. is a wholly-owned subsidiary of Defendant Tyson Foods, Inc.

142.    Upon information and belief, Defendant The Original Philly Steak, Inc. is a subsidiary of Defendant Tyson Foods, Inc.

143.    Defendants, Tyson Foods, Inc., The Original Philly Steak, Inc., and Original Philly Holdings, Inc., owned, operated, managed, and otherwise controlled the meat packing plant at 520 E Hunting Park Avenue, Philadelphia, PA 19124.

144.    Defendants, Tyson Foods, Inc., The Original Philly Steak, Inc., and Original Philly Holdings, Inc., by and through their agents, servants, and/or employees, collectively and

Case ID: 200701751

individually made decisions related to worker health, safety, protection, and sanitation in light of the COVID-19 pandemic.

145.    The Tyson Defendants are, collectively, one of America's largest meat processors and own, operate, manage and otherwise control dozens of meat processing plants in the United States.

146.    As a direct result of the carelessness, negligence, recklessness, gross negligence, and/or other liability producing conduct of the Defendants, Plaintiff's decedent, Brian Barker, suffered illness and injuries that led to his death.

147.    Specifically, Defendants actions and/or inactions caused Brian Barker to become infected with COVID-19 at the Original Philly Plant, while Brian Barker was working at the Original Philly Plant.

148.    Mr. Barker sustained prolonged conscious pain and suffering, and fear of impending death.

149.    Mr. Barker sustained a permanent loss of earnings and loss of earning capacity.

150.    Mr. Barker sustained permanent loss of enjoyment of life, loss of life's pleasures, and loss of life's hedonic pleasures.

151.    Mr. Barker has been permanently prevented from performing all his usual duties, occupations, recreational activities, and avocations, all to his and his beneficiaries' loss and detriment.

152.    The outrageous conduct described herein warrants the imposition of punitive damages to deter the Tyson Defendants and meat processing plants that operate in Pennsylvania and across the country from placing profits over the safety of their workers, their workers' families, and the public at large.

Case ID: 200701751

**COUNT I**
**Plaintiff, the Estate of Brian Barker v. The Tyson Defendants**
**<u>NEGLIGENCE</u>**

153.    Plaintiff incorporates all preceding paragraphs of this Complaint here by reference.

154.    At all relevant times, the Tyson Defendants owned, operated, maintained and otherwise controlled the Original Philly Plant, and controlled and supervised the work being done at the Plant.

155.    Specifically, the Tyson Defendants controlled and supervised all safety precautions and procedures at the Plant, including those related to COVID-19 protection and prevention.

156.    Control over the operations and safety decisions at the Original Philly Plant were also controlled by corporate representatives at the parent level.

157.    The specific decisions related to whether or not to provide PPE, whether or not to properly distance workers, and whether or not to take other measures to prevent the spread of COVID-19 at the Original Philly Plant were controlled by the Defendants' corporate leaders.

158.    In connection with their control and supervision of the Plant, the Tyson Defendants developed plans, recommendations, guidance, and safety procedures and specifications for performance of work at the Plant.

159.    The Tyson Defendants, having possession and control of the Plant and the work being done there, owed a duty to all those working at the Plant, including Brian Barker, a business invitee, to provide a reasonably safe work environment, free from unreasonable and dangerous hazards.

Case ID: 200701751

160.    The negligence, gross negligence, carelessness and recklessness of the Tyson Defendants, their agents, servants, and/or employees, which were the cause of Brian Barker's death, consisted of, but was not limited to, the following:

a.    Ignoring the risk of COVID-19 infection to workers at the Original Philly Plant;

b.    Failing to provide workers with any equipment to help prevent the spread of COVID-19 at The Plant;

c.    Intentionally ignoring the fact that workers at the Original Philly Plant were infected with and/or were displaying symptoms consistent with COVID-19;

d.    Failing to provide appropriate PPE to workers at the Original Philly Plant prior to April 2, 2020;

e.    Failing to prevent Plaintiff's decedent from contracting the virus at Defendants' meat plant;

f.    Failing to provide workers with any equipment to help prevent the spread of COVID-19 at The Plant;

g.    Failing to warn workers of the risks of known transmission of COVID-19 through the use of water fountains;

h.    Failing to close/disable water fountains despite the known risk of transmission of COVID-19;

i.    Failing to provide alternate potable water to employees despite the known risk of transmission of COVID-19 through the use of water fountains;

j.    Failing to close the Plant, despite the fact that the Tyson Defendants knew, or should have known, that workers at the plant were suffering from COVID-19;

22

Case ID: 200701751

k.    Failing to close the Original Philly Plant, despite the fact that the Tyson Defendants knew, or should have known, that workers at the plant were suffering from symptoms consistent with COVID-19;

l.    Ignoring federal guidance from the CDC and OSHA by not mandating the use of masks and PPE at the Original Philly Plant;

m.    Ignoring federal guidance from the CDC and OSHA by not mandating and/or enforcing social distancing guidelines at the Original Philly Plant;

n.    Ignoring federal guidance from the CDC and OSHA by not mandating that workers who were feeling ill report their symptoms to their superiors;

o.    Ignoring federal guidance from the CDC and OSHA by not mandating that workers who were feeling ill stay home from work and self-quarantine;

p.    Requiring workers to stand less than 6 feet apart;

q.    Failing to implement policies and procedures that mandated workers kept 6 feet apart;

r.    Failing to provide workers with masks and/or PPE;

s.    Failing to provide workers with clear guidelines for social distancing;

t.    Failing to reduce the numbers of workers per shift at the Original Philly Plant, despite the fact that the Tyson Defendants knew, or should have known, that workers in close proximity to one another were more prone to infection;

u.    Refusing to close the Original Philly Plant in a timely fashion, even though the Tyson Defendants knew workers at other Tyson Plants across the country had become infected with COVID-19 while at work;

Case ID: 200701751

v.     Enforcing and/or maintaining a formal and/or informal 'work while sick' policy at the Original Philly Plant;

w.     Failing to properly sanitize or otherwise disinfect the Original Philly Plant, despite the fact that workers at the plant were falling ill;

x.     Forcing vulnerable and/or at risk workers to perform temperature checks on those arriving at the Original Philly Plant before they were allowed inside the Plant;

y.     Forcing workers to perform said temperature checks without adequate training;

z.     Failing to provide trained medical staff to perform temperature checks;

aa.    Forcing workers to perform said temperature checks without adequate PPE;

bb.    Forcing workers to perform said temperature checks without disinfecting or otherwise sanitizing the thermometers;

cc.    Violating federal and state guidelines and requirements related to COVID-19 prevention in the workplace;

dd.    Violating OSHA regulations, including OSHA 1910.132, related to the use of PPE;

ee.    Breaching their duties under various sections of the Restatement (Second) of Torts, including, but not limited to, § 340, *et seq.*; § 341, *et seq.*; and § 500, *et seq.*

ff.     Failing to provide Brian Barker with a safe place to work;

gg.    Allowing workers at the Original Philly Plant, including Brian barker, to become infected by COVID-19 while working at The Plant;

24

Case ID: 200701751

hh.   Failing to properly train and supervise workers and employees of subcontractors about the danger posed by COVID-19 and the necessary methods to prevent infection;

ii.   Failing to properly train and supervise workers and employees of subcontractors about federal and state guidelines regarding COVID-19 and federal and state guidelines to prevent COVID-19 infection;

jj.   Failing to warn Brian Barker and other workers at the Original Philly Plant of the danger posed by COVID-19;

kk.   Failing to adopt, enact, employ, and enforce proper and adequate safety programs, precautions, procedures, measures, and plans;

ll.   Failing to provide workers with safety equipment;

mm.   Failing to provide workers with adequate safety equipment;

nn.   Failing to properly supervise and inspect the work being done at the Original Philly Plant;

oo.   Failing to prevent workers at the Original Philly Plant from being infected by COVID-19;

pp.   Failing to properly train supervisors and managers in determining when to shut down the plant due to a safety concerns;

qq.   Failing to provide proper training on how to combat an airborne virus;

rr.   Failing to hire and/or select appropriate individuals for managerial positions;

ss.   Failing to conduct appropriate safety surveys of the Plant;

tt.   Failing to hire appropriate consultants for how to respond to an airborne virus;

uu.   Failing to timely obtain appropriate PPE materials to protect workers;

Case ID: 200701751

vv.     Failing to implement proper policies and/or procedures for shutting the Plant down in the face of widespread virus/pandemic;

ww.     Failing to properly consider the safety of members of the public that would come into contact with those who worked at the facility; and

xx.     Failing to express due care under the circumstances described herein.

161.     The Defendants' actions and/or inactions were substantial factors and/or factual causes and/or increased the risk of harm to Plaintiff's decedent.

162.     The acts and omissions set forth herein were done in a negligent, grossly negligent, willful, reckless, and wanton fashion with a conscious indifference to the rights of members of the public generally, and Plaintiff's decedent in particular.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and/or severally, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, delay damages pursuant to Pa.R.C.P. 238, interest, and allowable costs of suit, and brings this action to recover the same.

### COUNT II
### Plaintiff, the Estate of Brian Barker v. The Tyson Defendants
### FRAUDULENT MISREPRESENTATION

163.     Plaintiff incorporates all preceding paragraphs of this Complaint here by reference.

164.     The Tyson Defendants owed lawful business invitees at the Original Philly Plant, including Brian Barker, the highest duty of care.

165.     The Tyson Defendants knew that workers at the Original Philly Plant had become infected with COVID-19, and/or were displaying symptoms consistent with COVID-19, prior to closing The Plant on April 3, 2020.

Case ID: 200701751

166.    The Tyson Defendants knew that workers at the Original Philly Plant were especially susceptible to COVID-19, and knew that once one worker was infected, the virus was likely to spread to others.

167.    Despite this knowledge, the Tyson Defendants did not warn workers that others at the Original Philly Plant had become infected with COVID-19 and/or were displaying symptoms consistent with COVID-19 prior to April 3, 2020.

168.    Despite this knowledge, the Tyson Defendants directly misrepresented to workers that there was no risk of infection and/or that the workers were unlikely to become infected and/or deliberately withheld their knowledge of workers at The Plant becoming infected with COVID-19.

169.    The Tyson Defendants fraudulently misrepresented the risk of infection to other workers at The Plant to induce those workers to continue their employment at The Plant.

170.    The Tyson Defendants fraudulently misrepresented the risk of infection to other workers at The Plant to induce those workers to continue making the Tyson Defendants profitable.

171.    The Tyson Defendants willfully and intentionally withheld their knowledge of COVID-19 infections at the Original Philly Plant.

172.    Workers at the Original Philly Plant, including Brian Barker, relied on the Tyson Defendants' misrepresentations and continued to arrive for work each day, completely unaware that other workers at the plant were infected with COVID-19 and/or were displaying symptoms consistent with COVID-19.

Case ID: 200701751

173.    As a direct and proximate result of Brian Barker's reliance on the Tyson Defendants' misrepresentations, Brian Barker became infected with COVID-19 at the Original Philly Plant, and died only days later.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and/or severally, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, delay damages pursuant to Pa.R.C.P. 238, interest, and allowable costs of suit, and brings this action to recover the same.

**COUNT III**
**Plaintiff, the Estate of Brian Barker v. The Tyson Defendants**
**INTENTIONAL MISREPRESENTATION**

174.    Plaintiff incorporates all preceding paragraphs of this Complaint here by reference.

175.    The Tyson Defendants owed lawful business invitees at the Original Philly Plant, including Brian Barker, the highest duty of care.

176.    At all relevant times, the Tyson Defendants represented to business invitees, including Brian Barker, that it was safe for workers to arrive for their shifts at the Original Philly Plant.

177.    The Tyson Defendants' representation that it was safe for workers to arrive for their shifts at the Original Philly Plant was false.

178.    This misrepresentation was made intentionally and knowingly.

179.    The Tyson Defendants learned they had misrepresented the risk of COVID-19 infections to workers at the Original Philly Plant, learned that workers at the Plant, including Brian Barker, relied upon the Tyson Defendants' misrepresentations, and the Tyson Defendants failed to correct their misrepresentations.

Case ID: 200701751

180.    At all relevant times, the Tyson Defendants had actual knowledge of the risk of COVID-19 infections to workers at the Original Philly Plant, including Brian Barker.

181.    At all relevant times, the Tyson Defendants had actual knowledge that workers at the Original Philly Plant were infected with COVID-19 and/or were experiencing symptoms consistent with COVID-19.

182.    Prior to Brian Barker becoming infected with COVID-19 at the Original Philly Plant, Defendants knew that other workers at the Original Philly Plant, including Steve McDowell, had become infected with COVID-19 and posed an extreme risk of infecting other workers, like Brian Barker, with COVID-19.

183.    Despite their actual knowledge of COVID-19 infections at the Original Philly Plant, and the risk these infections posed to other workers, including Brian Barker, the Tyson Defendants kept the Original Philly Plant open to workers up to and through at least April 3, 2020.

184.    The Tyson Defendants' motivation for intentionally misrepresenting the safety of the Original Philly Plant was to make money and to continue to profit.

185.    The Tyson Defendants intentionally misrepresented and deceived workers into believing that the Original Philly Plant was safe to ensure that workers continued to show up each day for their shifts and to ensure that the Tyson Defendants continued to profit.

186.    Workers at the Original Philly Plant, including Brian Barker, justifiably relied upon the Tyson Defendants' false representation that the Original Philly Plant was safe at all relevant times.

187.    The conduct of the Tyson Defendants, as described above, demonstrated a reckless disregard for the safety and health of workers at the Original Philly Plant.

29

Case ID: 200701751

188.    The death and injuries sustained by Plaintiff's decedent were caused by the negligence, gross negligence, carelessness, recklessness, outrageous conduct and intentional misrepresentations of the Tyson Defendants, acting by and through their agents, servants, workers and/or employees, both generally and in the following respects:

a.    Failing to close the Original Philly Plant despite the known dangers caused by COVID-19 infections at the plant;

b.    Failing to close the Original Philly Plant despite the known dangers caused by workers displaying symptoms of COVID-19 infections at the plant;

c.    Failing to warn workers at the Original Philly Plant of the dangers posed by COVID-19 infections at the Plant;

d.    Failing to warn workers at the Original Philly Plant of the dangers posed by workers displaying symptoms of COVID-19 infections at the Plant;

e.    Failing to prevent Plaintiff's decedent from contracting the virus at Defendants' meat plant;

f.    Failing to warn workers of the risks of known transmission of COVID-19 through the use of water fountains;

g.    Failing to close/disable water fountains despite the known risk of transmission of COVID-19;

h.    Failing to provide alternate potable water to employees despite the known risk of transmission of COVID-19 through the use of water fountains;

i.    Exposing workers at the Original Philly Plant to unacceptable risks of harm;

j.    Violating applicable OSHA regulations, including the General Duty Cause;

Case ID: 200701751

k.  Failing to provide special precautions which would have protected workers from the particular and unreasonable risks of harm which the Tyson Defendants recognized;

l.  Failing to train and supervise workers at the Original Philly Plant properly;

m.  Failing to adequately warn workers at the Original Philly Plant of the peculiar and/or unsafe conditions and/or special dangers existing at the Original Philly Plant;

n.  Violating and failing to comply with Federal and State statutes, local ordinances, and all other rules or regulations applicable or in effect, and specifically OSHA and CDC guidance regarding COVID-19 protection and prevention for workplaces and workers;

o.  Failing to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans; and

p.  Failing to cease and/or postpone operations until proper and necessary precautions could be taken to safeguard workers at the Original Philly Plant.

189.   The Tyson Defendants' conduct, as described above, demonstrated a wanton disregard for the safety and health of workers at the Original Philly Plant.

190.   By reason of the intentional misrepresentations of the Tyson Defendants, as set forth above, Plaintiff's decedent suffered an agonizing and horrific death.

191.   By conducting itself as set forth above, the Tyson Defendants' intentional misrepresentations were a substantial factor, a factual cause of and/or increased the risk of harm to Plaintiff's decedent.

Case ID: 200701751

192.    The Tyson Defendants' intentional misrepresentations qualify as an exception to the Fair Share Act, 42 Pa.C.S. § 7102, and therefore all Tyson Defendants are jointly and severally liable for the death of Brian Barker and all injuries related to his death.

**WHEREFORE**, Plaintiff demands that judgment be entered in favor of the wrongful death beneficiaries and against Defendants, jointly and severally, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, interest, and allowable costs of suit and brings this action to recover the same.

**COUNT IV**
**Plaintiff, the Estate of Brian Barker v. The Tyson Defendants**
**WRONGFUL DEATH**

193.    Plaintiff incorporates all preceding paragraphs of this Complaint here by reference.

194.    Brian Barker is survived by his wife, Renata Barker.

195.    Plaintiff, Renata Barker, is the duly-appointed Administratrix of the Estate of Brian K. Barker by grant of Letters of Administration by the Register of Wills of the County of Philadelphia, Commonwealth of Pennsylvania, dated July 22, 2020.

196.    By reason of the death of Brian Barker, his beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including, but not limited to, loss of support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling, and loss of guidance.

197.    As a direct and proximate result of the foregoing, decedent, Brian Barker's wrongful death beneficiaries incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care and medicine rendered to decedent until the time of

Case ID: 200701751

his death and to incur various funeral, burial, and estate and administration expenses for which Plaintiff is entitled to compensation.

198.    Plaintiff, individually and as Administratrix Ad Prosequendum of the Estate of Brian Barker, brings this action by virtue of the Wrongful Death Act, 42 Pa.C.S.A. § 8301, and Pa.R.C.P. 2202, and claims all benefits and recoverable damages under the Wrongful Death Act on behalf of all other persons entitled to recover under law.

199.    Plaintiff brings this action by virtue of, *inter alia*, 42 Pa.C.S. § 8301 and claim all damages encompassed thereby, including any and all damages members of the Estate are entitled to under Rettger v. UPMC Shadyside, 991 A.2d 915 (Pa. Super. 2010).

**WHEREFORE**, Plaintiff demands that judgment be entered in favor of the wrongful death beneficiaries and against Defendants, jointly and severally, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, interest, and allowable costs of suit and brings this action to recover the same.

**COUNT V**
**Plaintiff, the Estate of Brian Barker v. The Tyson Defendants**
**SURVIVAL ACT**

200.    Plaintiff incorporates all preceding paragraphs of this Complaint here by reference.

201.    Plaintiff claims on behalf of the Estate of Brian Barker all damages suffered by the Estate by reason of the death of Brian Barker, including, without limiting the generality of the following: the severe injuries and symptoms suffered by Brian Barker, which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Brian Barker suffered prior to his death; the loss of future earning capacity suffered by Brian Barker from the date of his death until the time in the future that he

33

would have lived had he not died as a result of the injuries he sustained by reason of the Defendants' conduct.

202.     Plaintiff brings this action on behalf of the Estate of Brian Barker, by virtue of the Survival Act, 42 Pa.C.S.A. § 8302, and claims all benefits of the Survival Act on behalf of Brian Barker's Estate, and other persons entitled to recover under law.

**WHEREFORE**, Plaintiff demands that judgment be entered in favor of the wrongful death beneficiaries and against Defendants, jointly and severally, in an amount in excess of the jurisdictional threshold in compensatory damages, punitive damages, interest, and allowable costs of suit and brings this action to recover the same.

**SALTZ MONGELUZZI & BENDESKY P.C.**

By:     */s/ Robert J. Mongeluzzi*
ROBERT J. MONGELUZZI
STEVEN G. WIGRIZER
JEFFREY P. GOODMAN
JASON S. WEISS
*Attorneys for Plaintiff, Renata Barker,*
*Administratrix of the Estate of Brian K.*
*Barker*

Dated: December 16, 2020

34

Case ID: 200701751