IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Renata Barker, Administratrix of the Estate of Brian K. Barker, Deceased, and in her own right,<br><br>                    Plaintiff,<br><br>vs.<br><br>Tyson Foods, Inc.; The Original Philly Steak, Inc. d/b/a Original Philly Cheesesteak Co.; and Original Philly Holdings d/b/a Original Philly Cheesesteak Co.,<br><br>                    Defendants. | CASE NO. 2:21-cv-00223 |

_____

**BRIEF IN SUPPORT OF MOTION TO DISMISS OF
TYSON FOODS, INC. AND ORIGINAL PHILLY HOLDINGS**

(Oral Argument Requested)

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................... 1

BACKGROUND .................................................................................... 2

ARGUMENT ......................................................................................... 4

I.   Plaintiff's claims are barred in this Court under the Pennsylvania Workers' Compensation Act. ............................................................. 4

   A.   Plaintiff cannot circumvent the PWCA by recasting workplace injury claims as fraud or willful misconduct ......................................... 7

   B.   Plaintiff cannot evade the PWCA based on the "very narrow" exception set forth in *Martin v. Lancaster Battery Co.* ............................ 8

II.  Plaintiff's claims are inadequately pleaded. .................................... 9

      A.   Plaintiff fails to plead fraud with particularity .......................... 9

      B.   Plaintiff also fails to adequately plead causation. .................... 12

III. Plaintiff's claims are preempted by federal law. ........................... 19

   A.   The complaint takes no account of the broad, express preemption of the Federal Meat Inspection Act (FMIA) and Poultry Products Inspection Act (PPIA). ............................................. 19

   B.   The complaint takes no account of the federal designation of Tyson facilities as critical infrastructure. ............................... 20

CONCLUSION ...................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Alston v. St. Paul Ins. Cos.*,
   612 A.2d 421 (Pa. 1992) ..................................................................... 6

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v.
   Lockridge*,
   403 U.S. 274 (1971) ........................................................................... 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................passim

*Bell v. Irace*,
   619 A.2d 365 (Pa. Super. Ct. 1993), *disapproved of on other grounds
   by Bole v. Erie Ins. Exch.*, 50 A.3d 1256 (Pa. 2012) ............................... 14

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011) ................................................................. 12

*Cary v. Hickenlooper*,
   673 F. App'x 870 (10th Cir. 2016) ........................................................ 17

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000) ........................................................................... 21

*David Pflumm Paving & Excavating, Inc. v. Found. Servs. Co.*,
   816 A.2d 1164 (Pa. Super. Ct. 2003) ..................................................... 11

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ............................................................... 13

*Farnese v. Se. Pa. Transp. Auth.*,
   487 A.2d 887 (Pa. Super. Ct. 1985) ...................................................... 14

*Fish v. Princess Cruise Lines Ltd.*,
   No. CV 20-3894 DSF (C.D. Cal. Aug. 21, 2020), ECF No. 26 .............................. 14

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ........................................................... 10, 11

*Grocery Mfrs. of Am., Inc. v. Gerace*,
   755 F.2d 993 (2d Cir. 1985) ................................................................. 19

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

C<span>ASES</span> (C<span>ONT</span>.)

*In re Party City Sec. Litig.*,
147 F. Supp. 2d 282 (D.N.J. 2001) ........................................................ 10

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002) ..........................................................passim

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) ................................................................ 11

*Khan v. Accurate Mold, Inc.*,
82 F. Supp. 2d 381 (E.D. Pa. 2000), *aff'd*, 265 F.3d 1055 (3d Cir.
2001) ................................................................................................ 4

*Klein v. Gen. Nutrition Cos.*,
186 F.3d 338 (3d Cir. 1999) ................................................................ 10

*Kline v. Arden H. Verner Co.*,
469 A.2d 158 (Pa. 1983) ................................................................. 4, 8

*Kostryckyj v. Pentron Lab. Techs., LLC*,
52 A.3d 333 (Pa. Super. Ct. 2012) ......................................................... 9

*Kuney v. PMA Ins. Co.*,
578 A.2d 1285 (1990) ..................................................................... 4, 6

*Martin v. Lancaster Battery Co.*,
606 A.2d 444 (Pa. 1992) ................................................................. 8, 9

*Moua v. Jani-King of Minn., Inc.*,
613 F. Supp. 2d 1103 (D. Minn. 2009) ................................................... 10

*Nat'l Meat Ass'n v. Harris*,
565 U.S. 452 (2012) .................................................................... 19, 20

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
831 F.3d 961 (8th Cir. 2016) ................................................................ 15

*Peterson v. Silverado Senior Living, Inc.*,
790 F. App'x 614 (5th Cir. 2019) .......................................................... 17

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ................................................................ 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

## CASES (CONT.)

*Port Auth. of N.Y. & N.J. v. Arcadian Corp.*,
189 F.3d 305 (3d Cir. 1999)............................................................................ 13, 18

*Poyser v. Newman & Co.*,
522 A.2d 548 (Pa. 1987)..................................................................................passim

*Rancho Viejo, LLC v. Norton*,
323 F.3d 1062 (D.C. Cir. 2003)............................................................................ 21

*Rincon v. Covidien*,
No. 16-CV-10033 (JMF), 2017 WL 2242969 (S.D.N.Y. May 22, 2017)................ 18

*Shakuur v. Costello*,
230 F. App'x 199 (3d Cir. 2007)............................................................................ 15

*Simmons v. Cmty. Educ. Ctrs., Inc.*,
No. Civ. A. No. 15-929, 2015 WL 1788712 (E.D. Pa. Apr. 20, 2015) ............. 6, 8, 9

*Sullivan v. Warminster Twp.*,
765 F. Supp. 2d 687 (E.D. Pa. 2011) ...................................................................... 3

*Sun Co. (R & M) v. Badger Design & Constructors, Inc.*,
939 F. Supp. 365 (E.D. Pa. 1996) ......................................................................... 11

*Swindol v. Aurora Flight Scis. Corp.*,
805 F.3d 516 (5th Cir. 2015) ................................................................................ 15

*United States v. Rodriguez-Collazo*,
Case No. 14-cr-00378-JMY, 2020 WL 2126756 (E.D. Pa. May 4,
2020)....................................................................................................................... 15

*Uon v. Tanabe International Co.*,
Civ. A. No. 10-3792, 2010 WL 4861436 (E.D. Pa. Nov. 30, 2010)..................passim

*Valentine v. Collier*,
960 F.3d 707 (5th Cir. 2020) ................................................................................ 15

*Weston v. Northampton Pers. Care, Inc.*,
62 A.3d 947 (Pa. Super. Ct. 2013)........................................................................ 14

*Winterberg v. Transp. Ins. Co.*,
72 F.3d 318 (3d Cir. 1995) ........................................................................ 1, 5, 6, 9

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**STATUTES**

21 U.S.C. § 467e .................................................................................................. 19

21 U.S.C. § 678 ................................................................................................... 19

77 Pa. Stat. § 411(1) ............................................................................................ 4

77 Pa. Stat. § 481(a) ............................................................................................ 4


**OTHER AUTHORITIES**

9 C.F.R. § 381.36(c) ............................................................................................ 20

9 C.F.R. § 381.45 ................................................................................................ 20

9 C.F.R. § 416.5(b) ............................................................................................. 20

9 C.F.R. § 416.5(c) ............................................................................................. 20

85 Fed. Reg. 26,313 (Apr. 28, 2020) ................................................................. 21

Fed. R. Civ. P. 9(b) .............................................................................................. 9

# INTRODUCTION

In the past year, millions have been infected with the novel coronavirus, and more than 400,000 Americans have died of complications related to COVID-19. Plaintiff alleges that Brian K. Barker worked at a Tyson meat processing facility in Philadelphia, Pennsylvania; that he contracted COVID-19 at work; and that he tragically died from the disease. Plaintiff alleges three causes of action—Negligence, Fraudulent Misrepresentation, and Intentional Misrepresentation—against Tyson Foods and Original Philly Holdings (together, "Tyson") for this alleged workplace injury.

This Court is the wrong forum to resolve Plaintiff's workplace injury claims. Pennsylvania has a strict, no-fault workers' compensation system administered by the Pennsylvania Bureau of Workers' Compensation of the Department of Labor and Industry. Plaintiff's claims against Tyson are barred—at  least in this Court—under the exclusive remedy provision of the Pennsylvania Workers' Compensation Act ("PWCA"), which directs that workplace injury claims must be adjudicated through the Pennsylvania Bureau of Workers' Compensation.

Plaintiff tries to evade the PWCA by recasting the workplace injury claims as ones for fraudulent or intentional misrepresentation, or for allegedly "grossly negligent, willful, reckless, [or] wanton" conduct. Those recharacterizations are futile. There is no "intentional tort" or "wanton [or] willful misconduct" exception to the PWCA's exclusive-remedy provision. *See Poyser v. Newman & Co.*, 522 A.2d 548, 551 (Pa. 1987). The "shield from tort liability on work-related injuries under the PWCA is virtually impenetrable," *Uon v. Tanabe International Co.*, Civ. A. No. 10-3792, 2010 WL 4861436, at *3 (E.D. Pa. Nov. 30, 2010), and courts are "very cautious about permitting common law litigation in matters arguably connected with work-related injuries." *Winterberg v. Transp. Ins. Co.*, 72 F.3d 318, 322 (3d Cir. 1995). The PWCA is

exclusive, *Poyser*, 522 A.2d at 550, and that includes claims, like the ones here, for "fraud and negligence," *Uon*, 2010 WL 4861436, at *1, *3.

The Court need go no further. All claims against Tyson are barred under the PWCA, and the Complaint should be dismissed on that basis alone.

*     *     *

Dismissal is also appropriate for the following independent reasons.

**First, lack of particularity.** Plaintiff fails to adequately plead a claim for misrepresentation. Rule 9(b) requires, "at a minimum," that a plaintiff must state with particularity "the 'who, what, when, where and how'" of the alleged fraud. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citation omitted). The complaint includes no such details.

**Second, plausibility.** Plaintiff fails to allege plausible, non-conclusory facts establishing causation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, Plaintiff alleges that Tyson made various supposed misrepresentations regarding workplace conditions and allegedly failed to implement various workplace safety measures, but the reader must speculate *how* Tyson's alleged statements or conduct allegedly caused Mr. Barker to contract COVID-19. Without specific non-conclusory allegations establishing causation, the Complaint fails to state a plausible claim to relief.

**Finally, Plaintiff's claims are inconsistent with federal law.** The claims brought by Plaintiff also fail to take into account the broad express preemption provisions in the Federal Meat Inspection Act ("FMIA") and Poultry Products Inspection Act ("PPIA"), as well as the national emergency declared by the President, the designation of Tyson as critical infrastructure, and numerous other federal directives in response to the pandemic. Those omissions also mandate dismissal.

# BACKGROUND

In December 2020, Plaintiff filed this lawsuit in the Court of Common Pleas for Philadelphia County against Tyson Foods, Inc. and Original Philly Holdings

(collectively, "Tyson"), and The Original Philly Steak, Inc.[1] [Dkt. 1-1] Plaintiff asserts three substantive causes of action against Defendants: Negligence ("Count I"), Fraudulent Misrepresentation ("Count II"), and Intentional Misrepresentation ("Count III"). [Dkt. 1-1 ¶¶ 153-92] Tyson timely removed to this Court based on federal officer, federal question, and diversity jurisdiction. [Dkt. 1][2]

According to Plaintiff, Mr. Barker worked at Tyson's Philadelphia facility. Plaintiff contends that the Defendants jointly "owned, operated, managed, and otherwise controlled" the Philadelphia facility, "made decisions related to worker health, safety, protection, and sanitation," and "supervised the work being done at" the facility. [Dkt. 1-1 ¶¶ 143-44, 154]

Plaintiff contends that Mr. Barker contracted COVID-19 and ultimately passed away from the disease. [Dkt. 1-1 ¶¶ 2-3] In addition, Plaintiff specifically alleges that Mr. Barker's last day at work was April 2, 2020; he tested positive for COVID-19 on April 7; and he died on April 23. [*Id.* ¶¶ 6-7]

The Complaint contains no factual allegations specifying how, when, or why Mr. Barker contracted COVID-19. Nor does Plaintiff identify the specific acts or omissions allegedly taken by Tyson that resulted in Mr. Barker contracting COVID-19. Similarly, there are no factual allegations in the Complaint from which it could be inferred

---

[1] The Defendant "The Original Philly Steak, Inc. d/b/a Original Philly Cheesesteak Co.," is not a corporate entity that is related to Tyson or the claims at issue here. Tyson has advised Plaintiffs that "The Original Philly Steak, Inc." is not a proper defendant to this action, and counsel are scheduled to discuss the issue early next week.

[2] The Complaint also alleges "Wrongful Death" ("Count IV") and "Survival Act" ("Count V") claims under 42 Pa. C.S. §§ 8301 and 8302. [*Id.* ¶¶ 193-202] But "wrongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death." *Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687, 707 (E.D. Pa. 2011). Thus, those counts must be dismissed because the underlying substantive claims fail for the reasons explained in this motion.

that Mr. Barker did not contract the disease as a result of community transmission or contact with an asymptomatic person. Instead, Plaintiff's claims are predicated on the conclusory allegation that Tyson's "actions and/or inactions were substantial factors and/or factual causes and/or increased the risk of harm to" Mr. Barker. [*E.g.*, *id*. ¶ 161]

## ARGUMENT

### I.   Plaintiff's claims are barred in this Court under the Pennsylvania Workers' Compensation Act.

The PWCA is the exclusive remedy for workplace injury claims asserted against an employer. 77 Pa. Stat. § 481(a); *Kline v. Arden H. Verner Co.*, 469 A.2d 158, 159 (Pa. 1983). By its terms, the PWCA "covers '*all injuries*,'" and the exclusivity clause bars tort actions flowing from *any* work-related injury." *Kline*, 469 A.2d at 160. The PWCA applies when an employee sustains an injury "arising in the course of his employment and related thereto," including "such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury." 77 Pa. Stat. § 411(1). In other words, "the workers' compensation system [is] the *exclusive* forum for redress of injuries in any way related to the workplace." *Kuney v. PMA Ins. Co.*, 578 A.2d 1285, 1287 (1990).

Plaintiff here alleges that Mr. Barker was employed as a meatpacking supervisor at Tyson's Philadelphia facility and that he "contracted COVID-19 at the [facility]." [Dkt. 1-1 ¶ 12] Plaintiff is thereby pleading that Mr. Barker sustained a workplace injury as defined by the PWCA.

Accordingly, the "exclusive remedy" against the employer is under § 481(a) of the PWCA. Under Pennsylvania law, the "entity possessing the right to control the manner of the performance of the servant's work is the employer." *Khan v. Accurate Mold, Inc.*, 82 F. Supp. 2d 381, 384 (E.D. Pa. 2000), *aff'd*, 265 F.3d 1055 (3d Cir. 2001) (citation omitted). Plaintiff here asserts that the Defendants jointly "owned, operated,

managed, and otherwise controlled" the Philadelphia facility, and had "possession and control" of the facility "and the work being done there," including the "safety procedures and specifications for performance of work." [Dkt. 1-1 ¶¶ 143, 158-59]

Because Plaintiff crafted the Complaint to allege a workplace injury allegedly caused by the Defendants "jointly" as the employer, the proper venue for resolving Plaintiff's claims is the Pennsylvania Bureau of Workers' Compensation, and dismissal is proper.[3] *See Winterberg*, 72 F.3d at 326 (affirming dismissal of complaint where "[t]he claims asserted are within the exclusive jurisdiction of the [Pennsylvania] workmen's compensation scheme").

*       *       *

Notwithstanding the PWCA's broad exclusivity, Plaintiff tries unsuccessfully to plead around the exclusivity provision by styling the claims against Tyson as ones for fraudulent or intentional misrepresentation (Counts II and III), or for allegedly "grossly negligent, willful, reckless, [or] wanton" conduct. [Dkt. 1-1 ¶ 162]

Pennsylvania courts have repeatedly rejected similar end-runs around the exclusivity of the PWCA. For example, in *Poyser*, an employee attempted to bypass the PWCA by basing his workplace injury claims on a "theory that [the employer] had caused [the employee]'s injury by willfully disregarding governmental safety regulations[,] deliberately exposing him to a known hazard," and even "deliberately concealing" OSHA safety violations. 522 A.2d at 549, 551. The Supreme Court of Pennsylvania affirmed the lower court's grant of judgment on the pleadings to the employer and emphatically rejected the plaintiff's attempt to circumvent the PWCA. "There is no

---

[3] As discussed in Defendants' Notice of Removal (Dkt. 1 at 18), Original Philly Holdings, Inc. was Mr. Barker's employer. Tyson Foods, Inc. is the ultimate parent of Original Philly Holdings, Inc. Plaintiff alleges that both Original Philly Holdings, Inc. and Tyson Foods, Inc. employed Mr. Barker, which allegation is taken as true for purposes of a motion to dismiss. As a result, this entire matter falls under the exclusive jurisdiction of the Pennsylvania Bureau of Workers' Compensation.

Pennsylvania judicial authority supportive of" an intentional-tort exception to the exclusivity provision. *Id.* at 551. The court elaborated: "The [employee]'s argument is an interesting one; but it is one that must be resolved by the General Assembly, not this Court. What he is asking us to do is to engraft upon [§ 481] an exception the legislature did not see fit to put there." *Id.* In short, when "the allegations of a claim have as their ultimate basis an injury compensable under the [PWCA], the claim must be considered within the framework of the statute," notwithstanding clever pleading. *Kuney*, 578 A.2d at 1287.

Prohibiting such end-runs is the fair compromise of providing employees a no-fault workers' compensation system. *See Alston v. St. Paul Ins. Cos.*, 612 A.2d 421, 424 (Pa. 1992). By enacting a robust exclusive-remedy provision for workplace injury claims as part of a workers' compensation system, the legislature provided employees "expeditious payment of compensation." *Id.* That "comprehensive system of substantive, procedural, and remedial laws comprising the workers' compensation system" reflects a carefully drawn compromise:

> The exclusivity clause of the Workmen's Compensation Act . . . is a version of the historical *quid pro quo* employers received for being subjected to a no-fault system of compensation for worker injuries. That is, while the employer assumes liability without fault for a work-related injury, he is relieved of the possibility of a larger damage verdict in a common law action. The statute therefore deprived workers of some rights in exchange for surer benefits, and immunized employers from common law actions in order to make benefits available to workers who were theretofore without practical remedies.

*Kuney*, 578 A.2d at 1286-87 (citations omitted). "Because of th[is] historical background," the Third Circuit has explained that courts must be "very cautious about permitting common law litigation in matters arguably connected with work-related injuries." *Winterberg*, 72 F.3d at 322; *see, e.g., Simmons v. Cmty. Educ. Ctrs., Inc.*, No.

Civ. A. No. 15-929, 2015 WL 1788712, at *6-7 (E.D. Pa. Apr. 20, 2015) (dismissing employee's tort claims where they attempted to plead around the PWCA).

The recasting of claims here has been rejected in previous cases.

### A.   Plaintiff cannot circumvent the PWCA by recasting workplace injury claims as fraud or willful misconduct.

Exclusivity applies to workplace injury claims recast as fraud, *Uon*, 2010 WL 4861436, at *3, and there is no exception for "intentional tort[s]" or "willful [or] wanton" conduct, *Poyser*, 522 A.2d 548, 551. The reasoning of *Uon* is directly on point. *Id.*

In *Uon*, a plaintiff asserted claims against an employer for "fraud and negligence, as well as for damages under Pennsylvania's Wrongful Death Act and Survival Act" after an employee "died . . . when his hair, which hung bound behind him in a pony-tail, became entangled in a spinning shaft of [the employer]'s case glue machine." *Id.* at *1. The plaintiff attempted to plead around the PWCA by alleging that the employer:

- "[K]new [the machine the deceased employee was using at the time of injury] was dangerous,"

- Knew "other employees had been injured while operating or cleaning the machine,"

- Knew "that in at least one case an employee lost an appendage,"

- "[C]oncealed from the decedent that operating the machine was dangerous,"

- "[P]rovided no training on cleaning" the machine,

- "[D]id not require employees operating the machine to wear their hair at a particular length or to wear hair nets," and

- Had been investigated by OSHA and "cited . . . for eight violations of federal safety regulations related to [the employer]'s failure to develop an acceptable protocol for using and cleaning the case glue machine."

*Id.* Moreover, the complaint alleged that the "decedent purportedly died as a result of his reliance upon these fraudulent misrepresentations and concealments." *Id.*

Notwithstanding those allegations of "willful," "wanton," "intentional," and "deceptive" conduct, this Court held that the "law in Pennsylvania is so thoroughly settled that no possibility exists that plaintiff has any viable claim against [the employer]." *Id.* at *3-4. Rather, the complaint "indisputably" established that it concerned "an injury within the scope of the PWCA" because the complaint alleged that "the decedent died from injuries sustained on the job." *Id.* at *4.

The same reasoning and result apply here. The Complaint here alleges that Mr. Barker "died from injuries sustained on the job," *Uon*, 2010 WL 4861436, at *4, as a result of Tyson's alleged failures to implement adequate safety precautions, including alleged violations of federal and state workplace standards, and that Tyson allegedly made misrepresentations regarding workplace safety.

Under the clear holdings of *Uon*, *Poyser*, *Kline*, and dozens of other Pennsylvania state and federal court decisions, Plaintiff's tort claims are barred in this Court by the PWCA's exclusive-remedy provision.

### B.    Plaintiff cannot evade the PWCA based on the "very narrow" exception set forth in *Martin v. Lancaster Battery Co.*

Plaintiff may also try to evade the PWCA's exclusivity provision by arguing that her claims fall within "a very narrow exception to PWCA's general exclusivity," *Simmons*, 2015 WL 1788712, at *7, established in *Martin v. Lancaster Battery Co.*, 606 A.2d 444, 446 (Pa. 1992). To fall within the exception, "a plaintiff must show '(1) fraudulent misrepresentation, which (2) leads to the aggravation of an employee's pre-existing condition.'" *Simmons*, 2015 WL 1788712, at *7 (quoting *Kostryckyj v. Pentron Lab. Techs., LLC*, 52 A.3d 333, 338 (Pa. Super. Ct. 2012)). State and federal courts post-*Martin* have made clear that "this narrow exception is limited to the facts in *Martin*." *Simmons*, 2015 WL 1788712, at *7 (citing cases). Allegations of "flagrant

- 8 -

misconduct" or "bad faith" alone will not justify invocation of the *Martin* exception. *Winterberg*, 72 F.3d at 322-23.

Here, there is no allegation that Tyson's alleged misrepresentations "caused a delay in ameliorative treatment which delay resulted in the aggravation of a [pre-existing] work-related injury." *Martin*, 606 A.2d at 445. Thus, even assuming the Complaint adequately pleaded a fraud claim (which it does not, as explained below), Plaintiff's claims would still fail to satisfy the *Martin* exception because they seek "compensation for the injury itself rather than the exacerbation of the injury from any alleged" fraud. *Simmons*, 2015 WL 1788712, at *8; *Kostryckyj*, 52 A.3d at 339 (collecting Pennsylvania cases "dismissing a plaintiff's common law action for failure to satisfy at least one prong of the [*Martin*] test"); *see also Uon*, 2010 WL 4861436, at *5 (rejecting *Martin* exception).

                              *     *     *

While the rest of this motion addresses other deficiencies in the Complaint, the Court need go no further in its analysis. The claims against Tyson are barred because the PWCA requires those claims to be pursued before the Pennsylvania Bureau of Workers' Compensation.

## II.    Plaintiff's claims are inadequately pleaded.

The Complaint fails to allege fraud with particularity and fails to plausibly allege causation, which are independent bases for dismissal.

### A.    Plaintiff fails to plead fraud with particularity.

"[A] party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of . . . fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller*, 311 F.3d at 217 (quoting *In*

*re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)). This "heightened pleading requirement in fraud actions serves important objectives: 'Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements.'" *Id.* at 216 (quoting *In re Burlington*, 114 F.3d at 1418).

**Who made the alleged statements?** Rule "9(b) requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements." *Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999) (granting motion to dismiss where "[t]he complaint fails to attribute the statement to any specific member of [the corporate defendant's] management").

The complaint here acknowledges that the Tyson entities act only "through [their] agents, servants, workers and/or employees," but the complaint fails to identify which of Tyson's thousands of employees allegedly made each of the statements attributed to Tyson. [Dkt. 1-1 ¶¶ 131, 136, 140, 188] Nor does the complaint distinguish between the two Tyson entities named as Defendants. *See Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009) (Simply "cluster[ing] all the Defendants together without the required specificity to discern the respective roles of the individual defendants in the alleged fraud" does not satisfy Rule 9(b).).

**What was said?** "[G]eneric references" to "broad statements" are not sufficient under Rule 9(b); instead, the complaint must specifically describe "the substance of the misrepresentation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 300 (D.N.J. 2001) ("Simply referring to a series of public statements and then alleging, in a general and conclusory manner, that those disclosures were false or misleading is insufficient.").

The complaint here fails to do so—referring only generally to categories of alleged misrepresentations regarding various topics. [*E.g.*, Dkt. 1-1 ¶¶ 179 (alleging

Tyson "misrepresented the risk of COVID-19 infections"), 185 (alleging that Tyson "misrepresented and deceived workers into believing [the facility] was safe")] This is particularly so where—as here—Plaintiff has simply "buil[t] [her] fraud claims around the same factual allegations put forth in the . . . negligence claim[]." *Sun Co. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 369 (E.D. Pa. 1996).

**Where were the statements made?** To satisfy Rule 9(b), a plaintiff generally "must plead or allege the date, time *and place* of the alleged fraud." *Frederico*, 507 F.3d at 200 (emphasis added). Here, the complaint contains no such allegations.

**When were the statements made?** The complaint fails to specify when the statements were allegedly made. *See In re Rockefeller*, 311 F.3d at 221 (holding that the complaint's allegations that negotiations occurred "'[s]everal weeks' before May 6, 1996 and 'some time ago' lack the sort of precision necessary to meet the requirements of Rule 9(b)"). Particularly in the context of the current pandemic—where the facts, and scientific knowledge, regarding the virus can change in a matter of hours—identifying the "when" is critically important to any allegation that a Tyson representative made a statement knowing it was false. [*E.g.*, Dkt. 1-1 ¶ 178]

**How were the statements relied upon?** Finally, the complaint alleges no facts to support the conclusory allegation that Mr. Barker "justifiably relied upon the Tyson Defendants' false representation[s]." [*See* Dkt. 1-1 ¶¶ 186, 172] *See David Pflumm Paving & Excavating, Inc. v. Found. Servs. Co.*, 816 A.2d 1164, 1171 (Pa. Super. Ct. 2003). The lack of particularity also precludes any inference of causation, knowledge, or materiality. *See Sun Co. (R & M)*, 939 F. Supp. at 369 ([I]n failing to allege specific statements, Plaintiff has not shown a causal connection between the misrepresentations and the damages incurred."); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d Cir. 2006) ("A pleading of scienter sufficient to satisfy Rule 9(b) 'may not rest on a bare inference that a defendant "must have had"

knowledge of the facts' or 'must have known' of the fraud given his or her position in the company.") (quoting *In re Advanta*, 180 F.3d 525, 539 (3d Cir. 1999)).

In sum, Plaintiff's misrepresentation claims fail under Rule 9(b) because the complaint fails to identify the who, what, when, where, and how with respect to any allegation of fraud. *See In re Rockefeller*, 311 F.3d at 224 ("[F]raud allegations should be analyzed individually to determine whether each alleged incident of fraud has been pleaded with particularity.").

### B.  Plaintiff also fails to adequately plead causation.

To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). To be plausible, "a complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (alteration in original) (quoting *Twombly*, 550 U.S. at 555 & n.3). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Applying those standards is a two-step inquiry. *First*, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Significantly, the "assumption of truth" applicable to well-pleaded facts does not apply to "pleadings that . . . are no more than conclusions." *Id.* at 679.

*Second*, having identified the well-pleaded factual allegations, the Court considers whether the remaining factual allegations are sufficient to "nudge" the Plaintiff's claims "across the line from conceivable to plausible." *Id.* at 680. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" in determining whether the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679, and *Santiago v.*

*Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)). This standard is not met when the alleged harm could be explained by an alternative theory that the complaint does not plead "sufficient factual matter" to rebut. *Iqbal*, 556 U.S. at 678; *see also, e.g.*, *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998-99 (9th Cir. 2014) (dismissal required where allegations are "consistent with both [the plaintiffs'] theory of liability and [an] innocent alternative"). Simply put, more than a "sheer possibility" of liability is required to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Here, Plaintiff alleges that Mr. Barker died "from respiratory complications related to COVID-19." [Dkt. 1-1 ¶ 117] To establish causation consistent with the above standards, Plaintiff must plead—and ultimately prove—that Mr. Barker contracted COVID-19 *from his work* rather than elsewhere, and then, that he contracted COVID-19 *due to Tyson's alleged misrepresentations or negligence* rather than some other cause. *See Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 318 (3d Cir. 1999) (affirming dismissal of tort claims for failure to plausibly allege causation—*i.e.*, a "causal nexus between the careless act and the resulting injuries") (citation omitted).

The Complaint fails to meet that standard. Plaintiff alleges that "Tyson has experienced COVID-19 outbreaks at dozens of" its facilities across the country (at unspecified times) (Dkt. 1-1 ¶ 101); that Tyson allegedly failed to take various measures and made various generalized representations to workers at the Philadelphia facility (*e.g.*, ¶¶ 28-30, 160, 188); upon "information and belief" that one of Mr. Barker's co-workers had become infected with COVID-19 before Mr. Barker (*id*. ¶ 81); and that, "[a]s a result," Mr. Barker "was infected with COVID-19 while working at the" Philadelphia facility. [*Id*. ¶¶ 4, 121] That is a conclusory allegation of causation. A plaintiff cannot simply "tender[] 'naked assertion[s]' devoid of "further factual

enhancement." *Iqbal*, 556 U.S. at 678 (second alteration in original) (quoting *Twombly*, 550 U.S. at 557).[4]

Based on well-settled pleading standards, a similarly deficient complaint brought by COVID-infected passengers of Princess Cruise Lines was recently dismissed for failing to state a claim. The court's reasoning is instructive, holding that while the passengers "allege they 'contracted COVID-19 on Defendant's ship, [the complaint] fails to contain sufficient allegations to plausibly support that conclusion.'" Order at 8, *Fish v. Princess Cruise Lines Ltd.*, No. CV 20-3894 DSF (JCx) (C.D. Cal. Aug. 21, 2020), ECF No. 26 (citing *Iqbal*, 556 U.S. at 678). If causation cannot be plausibly assumed in a case involving passengers confined to a cruise ship for 12 days during an alleged COVID-19 outbreak, it is even more implausible to assume causation for individuals who are not confined to their workplace but rather are living in a community in the midst of a pandemic. *Id.*

Allegations based on mere speculation are also not enough to state a claim that is plausible on its face. *See, e.g.*, *Farnese v. Se. Pa. Transp. Auth.*, 487 A.2d 887, 890 (Pa. Super. Ct. 1985) (whether "the negligence of the [defendant] was the proximate cause of the injuries incurred by plaintiff" cannot be "based on conjecture, surmise, guess or speculation"); *Bell v. Irace*, 619 A.2d 365, 368 (Pa. Super. Ct. 1993), *disapproved of on other grounds by Bole v. Erie Ins. Exch.*, 50 A.3d 1256 (Pa. 2012) (affirming dismissal of complaint where "the alleged facts . . . are insufficient to warrant a finding of legal causation"); *Weston v. Northampton Pers. Care, Inc.*, 62 A.3d 947, 1019 (Pa. Super. Ct. 2013) (misrepresentation claim requires showing that the plaintiff's "injury was proximately caused by [justifiable] reliance" on the misrepresentation).

---

[4] The Complaint's other references to causation—that Tyson's "actions and/or inactions were substantial factors and/or factual causes and/or increased the risk of harm to Plaintiff's decedent" and similar statements (*e.g.*, Dkt. 1-1 ¶¶ 161, 147, 191)—are legal conclusions and thus cannot be credited.

Here, the Complaint has no allegation regarding causation that constitutes anything more than speculation or conclusion. For example, Plaintiff fails to answer the rudimentary questions of which, if any, of the list of allegedly unadopted safety measures would have prevented Mr. Barker from contracting COVID-19, how Mr. Barker relied on any alleged misrepresentation, or how this reliance, even if alleged, caused him to contract COVID-19.

It is common knowledge that the pandemic's exponential spread has spared no country and no industry, and courts are permitted to use "judicial experience and common sense" when determining the sufficiency of a complaint. *Iqbal*, 556 U.S. at 679. Plaintiff's bare allegation that Mr. Barker "contracted COVID-19 at the [Philadelphia facility]" must be considered against the backdrop of what is common knowledge—all of which is either set forth in the Complaint or properly subject to judicial notice—that the virus is highly contagious, has proven extremely difficult to trace and contain, and has been transmitted widely through community spread across Pennsylvania and the nation.[5] For example:

- **Community spread.** The rapid spread of COVID-19 arises from community spread, defined by the CDC to mean "people have been infected with the virus in an area, including some *who are*

---

[5] This Court may take judicial notice of information contained on a governmental agency's webpage or in agency records and reports. *See Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518-19 (5th Cir. 2015) (webpage); *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 831 F.3d 961, 968 (8th Cir. 2016) (agency reports); *Shakuur v. Costello*, 230 F. App'x 199, 201 (3d Cir. 2007) (taking judicial notice of state prison's internal grievance procedures in deciding a motion to dismiss). Consistent with these rules, courts across the country—including this Court—have taken judicial notice of basic information about COVID-19. *See, e.g.*, *United States v. Rodriguez-Collazo*, Case No. 14-cr-00378-JMY, 2020 WL 2126756, at *1 (E.D. Pa. May 4, 2020) (taking "judicial notice that there is currently an outbreak of COVID-19" at a Bureau of Prisons facility based on data from the agency's website); *Valentine v. Collier*, 960 F.3d 707, 708 n.1 (5th Cir. 2020) ("[T]his court has taken judicial notice of statistics concerning COVID-19 already.").

*not sure how or where they became infected.*" [Dkt. 1-1 ¶ 23 (emphasis added)][6]

- **Highly contagious.** As of January 13, 2021, more than 22 million cases have been confirmed nationwide, and over 650,000 in Pennsylvania, and the numbers in the U.S. and in Pennsylvania continue to increase.[7]

- **Many unreported cases.** The CDC estimates that, for every reported case of COVID-19 in the United States, there are ten more unreported cases—in part because millions of Americans have been unknowingly infected.[8] [*See* Dkt. 1-1 ¶ 18]

- **Delayed onset and asymptomatic carriers.** Tracing is difficult because the time between exposure and symptom onset can average a week or more, and because many people are asymptomatic.[9] Even for symptomatic individuals, someone can be infected for up to 14 days before realizing they are sick.[10] Other infected individuals never realize they were sick.[11] Pre-

---

[6] *See also* CDC, *Frequently Asked Questions: Coronavirus Disease 2019 (COVID-19)* (last updated Jan. 19, 2021), https://www.cdc.gov/coronavirus/2019-ncov/faq.html.

[7] *See* CDC, *U.S. COVID-19 Cases and Deaths by State* (updated Jan. 21, 2021), https://www.cdc.gov/covid-data-tracker/#cases.

[8] *See* CDC, *Transcript for the CDC Telebriefing Update on COVID-19* (June 25, 2020), https://www.cdc.gov/media/releases/2020/t0625-COVID-19-update.html.

[9] *See The Implications of Silent Transmission for the Control of COVID-19 Outbreaks* ("Silent Transmission"), Proceedings of the National Academy of Science of the United States of America (July 28, 2020), https://www.pnas.org/content/117/30/17513; CDC, *COVID-19: Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)* ("Clinical Guidance for Management of Patients") (updated Dec. 8, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html.

[10] *See* CDC, *COVID-19: Clinical Questions about COVID-19: Questions and Answers* (updated Jan. 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Transmission; *see also Clinical Guidance for Management of Patients.*

[11] *See* CDC, *COVID-19: COVID-19 Pandemic Planning Scenarios* (updated Sept. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html.

symptomatic and asymptomatic persons are believed to be a significant cause of the pandemic's propagation.[12]

- **Protections are not perfect.** While the CDC, OSHA, and others have identified steps that can be taken to decrease risk of the spread of infectious diseases such as COVID-19, such as using personal protective equipment ("PPE"), social distancing, and increased handwashing,[13] the effectiveness of such steps is admittedly limited. Even among healthcare providers and others who are using PPE and other protective measures to minimize exposure, the disease is widespread.

In short, in a society in which the coronavirus was—and still is—spreading exponentially, the conclusory allegation that an individual contracted the virus at work is not a well-pleaded fact and, in the absence of further detail, is not entitled to an "assumption of truth." *Iqbal*, 556 U.S. at 678-79.

In analogous cases, courts have dismissed complaints for failure to properly allege causation where "judicial experience and common sense" indicate that causation cannot plausibly be assumed. *See, e.g.*:

- **Pneumonia—***Peterson v. Silverado Senior Living, Inc.*, 790 F. App'x 614, 617 (5th Cir. 2019) (affirming dismissal where, "[e]ven accepting the alleged facts as true, the Peterson[s'] second amended complaint is insufficient to support a plausible inference that Silverado's actions were more likely than not the cause of Ruby's death" because, *e.g.*, "we are being asked first to agree that, of all possible causes, Seroquel caused Ruby's pneumonia");

- **Abdominal pain and liver problems—***Cary v. Hickenlooper*, 673 F. App'x 870, 875 (10th Cir. 2016) ("But he makes only conclusory assertions that these conditions are the result of exposure to toxic water at SCF. He fails to present any specific facts to show that his

---

[12] *See Silent Transmission.*

[13] *See, e.g.*, CDC, *COVID-19: How to Protect Yourself & Others* (updated Dec. 31, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

exposure to minimally elevated levels of uranium or other toxins at SCF has caused or exacerbated these problems.");

- **Abdominal infections**—*Rincon v. Covidien*, No. 16-CV-10033 (JMF), 2017 WL 2242969, at *1 (S.D.N.Y. May 22, 2017) ("Ignoring conclusory assertions and the recitation of legal standards, however, Rincon fails to allege any facts that plausibly establish . . . causation. . . . Nothing in the Amended Complaint even endeavors to explain why the [defendant's alleged negligence] is a more likely, let alone proximate, cause of Rincon's alleged harms. In the final analysis, therefore, Rincon offers only the sort of '[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements,' that the Supreme Court has made clear is insufficient to survive a motion to dismiss.").

Similar to these cases, no inference of causation or wrongdoing is warranted from the allegation that Mr. Barker became ill with COVID-19. There are many alternative sources of infection, none of which the complaint rules out: he could have contracted COVID-19 in his community or residence, in retail stores or other essential businesses, from an asymptomatic or pre-symptomatic person, from a symptomatic person wearing a mask, or from a virus-contaminated fomite—all potential sources unrelated to Tyson.

Moreover, even if the Complaint adequately alleged that Mr. Barker were exposed to COVID-19 at work, this still would not establish the critical required link between his infection and specific alleged wrongful conduct by Tyson. *See Port Auth. of N.Y. & N.J.*, 189 F.3d at 318 (requiring a "causal nexus between the careless act and the resulting injuries").

The Complaint fails under established pleading standards, and it is especially important to adhere to those standards in the midst of a pandemic that has caused the death of more than 400,000 Americans and sickened millions more. If conclusory allegations of causation are permitted, virtually any employer, business, school,

church, or host could be brought into protracted litigation based on speculation. More than conclusory allegations must be required. *Iqbal*, 556 U.S. at 678.

### III.   Plaintiff's claims are preempted by federal law.

#### A.   The complaint takes no account of the broad, express preemption of the Federal Meat Inspection Act (FMIA) and Poultry Products Inspection Act (PPIA).

Even if the complaint were not barred by the PWCA, and even if it satisfied federal pleading standards, the allegations of the complaint would still fail to state a claim because they take no account of the federal preemption that applies to federally-regulated meat facilities. [Dkt. 1-1 ¶¶ 145 (alleging Tyson is "one of America's largest meat processors"), 62 (alleging the Philadelphia plant "specializes in beef processing and packaging")] *See also* FSIS Meat, Poultry and Egg Product Inspection Directory at 101 (Jan. 18, 2021) (identifying the Philadelphia facility with establishment numbers M9586 and P9586 for both "Meat Processing" and "Poultry Processing").[14]

The FMIA and PPIA prohibit states from imposing requirements that are "in addition to, or different than" those prescribed under the Acts. 21 U.S.C. §§ 678, 467e. The Supreme Court has held that this provision in the FMIA "sweeps widely" and "prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the Act and concern a slaughterhouse's facilities or operations." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459-60 (2012); *see also Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993, 997 (2d Cir. 1985) (PPIA and FMIA preemption provisions are "substantially identical"). If the U.S. Department of Agriculture's Food Safety and Inspection Service ("FSIS") "could issue regulations

---

[14] https://www.fsis.usda.gov/wps/wcm/connect/bf8d9766-9767-4e0c-a9f1-efea0b2a42bc/MPI_Directory_Establishment_Name.pdf?MOD=AJPERES.

under the [Acts] . . . mandating" the requirement at issue, then the State's require-ment is preempted. *Nat'l Meat Ass'n*, 565 U.S. at 466.

Here, there is no question that FSIS "could issue regulations" regarding the use of personal protective equipment and the prevention of infectious disease within meat processing facilities, *because it has already done so*, including, for example a "disease control" regulation that requires "[a]ny person who has or appears to have an infectious disease . . . [to] be excluded from any operations which could result in product adulteration and the creation of insanitary conditions," as well as regulations regarding the required use of personal protective equipment such as "[a]prons, frocks, and other outer clothing worn by persons who handle product," and sanitation and hygiene regulations for things such as "hand rinsing facilities" for onsite poultry in-spectors. 9 C.F.R. § 416.5(b), 5(c); *see also id.* §§ 381.36(c), 381.45.

At the core of the complaint, Plaintiff faults Tyson for not implementing measures *different from* and *in addition to* the requirements that FSIS has imposed regarding employee hygiene, facility sanitation, and infectious disease. Preemption follows.

**B.    The complaint takes no account of the federal designation of Tyson facilities as critical infrastructure.**

The Complaint also fails to take account of the designation of food companies as critical infrastructure by the President of the United States, as well as repeated fed-eral directives that Tyson and other meat and poultry processors continue operations as a critical source of food during the pandemic.

Just days after declaring a national emergency, the President explained that employees in "critical infrastructure industr[ies]," including food and agricultural workers, have a "special responsibility" to continue to follow CDC guidelines while providing food during the national emergency. Exec. Office of Pres., *The President's Coronavirus Guidelines for America* at 2 (Mar. 16, 2020). The President reinforced

- 20 -

this directive through the *Food Supply Chain Resources* executive order under the DPA. *See* Exec. Office of Pres., *Executive Order on Delegating Authority Under the DPA with Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19*, 85 Fed. Reg. 26,313, 26,313 (Apr. 28, 2020). The President's determinations here—concerning the ongoing operations of critical infrastructure during a national emergency—"represent[] a national response to a specific problem of 'truly national' concern." *Rancho Viejo, LLC v. Norton*, 323 F.3d 1062, 1078-79 (D.C. Cir. 2003). Once the President has made those determinations, "state law is naturally preempted to the extent of any conflict." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Subjecting those national determinations to "concurrent jurisdiction" by "local law" would "fully . . . defeat the congressional goals underlying" the DPA. *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 286 (1971). And the overarching theory of the complaint is that Tyson was required to cease operating the Philadelphia facility during the national emergency—pursuant to Pennsylvania law—despite federal directives to the contrary. [*See, e.g.*, Dkt. 1-1 ¶¶ 70, 160(j)-(k), 160(u), 188(a)-(b), 188(p)]

## CONCLUSION

Based on the foregoing, Tyson respectfully requests the complaint be dismissed with prejudice.

Dated: January 22, 2021                    Respectfully submitted,


/s/ William H. Catto
William H. Catto
**FREEMAN MATHIS & GARY, LLP**
1600 Market St, Suite 1210
Philadelphia, PA 19103-7401
Telephone: 267.608.1740
Facsimile: 770-937-9960
Email: wcatto@fmglaw.com

- 21 -

Christopher S. Coleman
(*pro hac vice* forthcoming)
**Perkins Coie LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: 602.351.8000
Facsimile: 602.648.7000
Email: CColeman@perkinscoie.com

Mary Gaston
(*pro hac vice* forthcoming)
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: MGaston@perkinscoie.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

This is to certify that, on January 22, 2021, a true and correct copy of the fore-going document was served upon all counsel of record via the Court's CM/ECF system as follows:

Robert J. Mongeluzzi
Steven G. Wigrizer
Jeffrey P. Goodman
Jason S. Weiss
**SALTZ MONGELUZZI & BENDESKY P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19103

*Attorneys for the Plaintiff*

/s/ William H. Catto