IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RENATA BARKER,** Administratrix of the : <br> **ESTATE OF BRIAN K. BARKER,** : <br> Deceased, and in her own right, : <br> **Plaintiff,** : <br> : <br> v. : <br> : <br> **TYSON FOODS, INC.,** : <br> **Defendant.** : | Civ. No. 21-223 |

**Diamond, J.**                                                              December 6, 2021

<u>**MEMORANDUM**</u>

Renata Barker, proceeding in her own right and for the estate of her deceased husband, Brian, alleges that Mr. Barker's employer, Defendant Tyson Foods, caused his wrongful death from COVID-19. Tyson has moved to dismiss, arguing that: it is immune from suit; Plaintiff has not made out liability; and federal law preempts her claims. Fed. R. Civ. P. 12(b)(6). I will grant Tyson's Motion.

## I.   PROCEDURAL HISTORY

On July 27, 2020, Plaintiff initiated this action in the Philadelphia Common Pleas Court against Tyson Foods, Original Philly Holdings, and Original Philly Steak, Inc. (Doc. No. 1-1.) Proceeding under state common law, she alleges negligence, fraudulent misrepresentation, intentional misrepresentation, wrongful death, and survival. (<u>Id.</u>) Defendants removed to this Court, invoking diversity, federal question, and federal defense jurisdiction. (Doc. No. 1.) Plaintiff moved to remand for lack of subject matter jurisdiction. (Doc. No. 9.) In my earlier Memorandum, I denied that Motion, finding that Plaintiff had fraudulently joined non-diverse Defendants Original Philly Holdings and Original Philly Steak, Inc. <u>Barker v. Tyson Foods, Inc.</u>, Civ. No. 21-223, 2021 WL 5184074 (E.D. Pa. Nov. 4, 2021). Because the remaining Defendant,

1

Tyson Foods, is diverse from Plaintiff, and because the amount in controversy exceeds $75,000, I ruled that there was diversity jurisdiction. Id. at *4.

Tyson has moved to dismiss. (Doc. No. 5.) The matter is fully briefed. (Doc. Nos. 10, 14, 19, 20, 24, 25.)

## II. LEGAL STANDARDS

I must conduct a two-part analysis. Fowler v. PMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, I accept Plaintiff's factual allegations and disregard legal conclusions or mere recitations of elements. Id. I then determine whether the facts alleged make out a "plausible" claim for relief. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, the burden is on Defendants to show that Plaintiff has failed to allege facts that "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). I may dismiss claims with prejudice if amendment would be futile. Phillips, 515 F.3d at 228.

## III. FACTUAL ALLEGATIONS

Mr. Barker was a supervisor at the Original Philly Cheesesteak Co. meatpacking plant, which is "owned, supervised, and controlled by Tyson." (Doc. No. 1-1 at ¶ 3.) On March 9, 2020, both the Occupational Safety and Health Administration and the Centers for Disease Control recommended workplace social distancing and use of protective equipment to prevent the spread of COVID-19. (Id. at ¶¶ 25-27.) Plaintiff alleges that Tyson took no safety measures and instead made working conditions more hazardous. (Id. at ¶¶ 11, 13, 14.) For instance, Tyson did not require its employees to use PPE, and maintained a work-while-sick policy. (Id. at ¶¶ 29-30.)

Tyson penalized those who took time off and refused to provide paid sick leave. (Id. at ¶¶ 31-32.) Employees thus "arriv[ed] for their shifts while sick for fear of losing their jobs, or their paychecks." (Id. at ¶ 65.)

As alleged, Tyson also exposed Mr. Barker, who had diabetes and high blood pressure, to particular dangers. Tyson twice required Mr. Barker to deliver a laptop to a manager the company knew had tested positive for the virus. (Id. at ¶¶ 82-83.) On April 2, 2020, Tyson instructed Mr. Barker to take the "temperature of workers without equipping [him] . . . with adequate PPE," or any training on "how to safely perform temperature checks." (Id. at ¶¶ 73, 110-111.)

On April 7, Mr. Barker tested positive for COVID-19. (Id. at ¶ 114.) On April 23, he died from virus-related respiratory complications. (Id. at ¶¶ 114-117.)

## IV.   DISCUSSION

Tyson argues that Plaintiff's claims are: (1) barred under the Pennsylvania Worker's Compensation Act; (2) inadequately pled; and (3) preempted by federal law. Because I agree that the PWCA bars Plaintiff's claims, I will not address Tyson's remaining arguments.

As I discussed in my earlier Memorandum, the Pennsylvania Supreme Court has held "that workmen's compensation is the exclusive remedy for job related injuries." Kline v. Arden H. Verner Co., 469 A.2d 158, 159 (Pa. 1983); Barker, 2021 WL 5184074 at *2. Accordingly, an employee may not bring "actions at common law against an employer" for injuries within the scope of the Act. Kline, 469 A.2d at 160-61. As I discussed, under the Act, Original Philly Holdings, Tyson's subsidiary, is immune from Plaintiff's state law claims. Barker, 2021 WL 5184074 at *3.

After issuing my Memorandum I ordered the Parties to address how this litigation should proceed in light of that immunity ruling. (Doc. No. 23.) Not surprisingly, Tyson urges that as Mr.

3

Barker's employer, it, too, is immune from suit. (Doc. No. 24 at 8-9.) Yet Plaintiff has almost ignored my Order, and instead repeated the factual allegations she made in her Complaint. (Doc. No. 25.) In thus reiterating that as Mr. Barker's employer, Tyson controlled (and so was responsible for) his working conditions, Plaintiff has underscored that Tyson is immune under the PWCA.

In the half page she devotes to the question, Plaintiff argues that Tyson cannot be immune because the Pennsylvania Supreme Court has held that an employee can have only one immune employer. (Doc. No. 24 at 7.) I rejected this argument in my earlier Memorandum. Barker, 2021 WL 5184074 at *2. The Pennsylvania Supreme Court has held only that: (1) when applying the Act, a parent and its subsidiary "must be regarded as separate entities"; and (2) a parent indirectly benefitting from the work of a subsidiary's employee does not automatically make that parent an employer. Kiehl v. Action Manufacturing Co. 535 A.2d 571, 574 (Pa. 1987) (citing Mohan v. Continental Distilling Co., 222 A.2d 876, 879 (Pa. 1966)). Contrary to Plaintiff's contentions, Pennsylvania courts have explicitly held that "an employee may have more than one 'employer' for purposes of the Act." Temple v. Milmont Fire Co., 525 A.2d 848, 850 (Pa. Commw. 1987), cert. denied, 525 A.2d 848 (Pa. 1987); see also Nagle v. TrueBlue, Inc., 148 A.3d 946, 959-60 (Pa. Commw. 2016) (explaining that the exclusivity provision "does not refer to the liability of *the* employer, but '*an*' employer" and that the Act states that wherever "'singular is used, the plural shall be included'"), cert. denied, 169 A.3d 563 (Pa. 2017). Moreover, "all such employers under the Act are entitled to immunity." Pastore v. Anjo Constr. Co., 578 A.2d 21, 25 (Pa. Super. 1990).

Under the PWCA, an employer is an entity or person that "control[s] and direct[s] the manner and method of work" employees perform. Kiehl, 535 A.2d at 574. In a parent-subsidiary

relationship, when the employee "acted in furtherance of the functions of" both the parent and subsidiary, I must look "to other indicia of the right to control" to determine which party—or parties—is the employer. See Joyce v. Super Fresh Food Mkts, Inc., 815 F.2d 943, 946-47 (3d Cir. 1987).

As I have discussed, Plaintiff's repeated allegations and contentions confirm that Tyson was Mr. Barker's employer.  Plaintiff alleges that Tyson "owned, operated, managed, and otherwise controlled" the meatpacking plant, and "sell[s] meat products under the brand name Original Philly Cheesesteak." (Doc. No. 1-1 at ¶¶ 54, 143, 144.) Plaintiff also alleges that Tyson did not provide PPE, mandated employees' work conditions, enforced a work-while-sick policy, refused sick leave, threatened termination, refused to close the meatpacking plant, explicitly instructed Mr. Barker to "take the temperatures of his co-workers arriving at the plant," and directed Mr. Barker to deliver a laptop to his COVID-infected manager. (Id. at ¶¶ 10, 30, 67, 70, 73, 83, 110.) In her most recent filing, Plaintiff reiterates Tyson's control over Mr. Barker's working conditions. (Doc. No. 25 at 2-4.)

These allegations of control are not surprising. To make out causation, Plaintiff must allege (and eventually prove) that Tyson directed the hazardous conditions of Mr. Barker's employment. See Port Auth. of N.Y & N.J v. Arcadian Corp., 189 F.3d 305, 318 (3d Cir. 1999). Those same allegations of Tyson's control necessarily confirm that under the Act, Tyson was Mr. Barker's employer.

Plaintiff also argues (for the first time) that her fraudulent misrepresentation and intentional misrepresentation claims fall outside the PWCA exclusivity provision. (Doc. No. 10 at 20-25.) Plaintiff has once again misread the law and her own Complaint.

The Act includes a limited exception to exclusivity, allowing claims for "aggravation of an

employee's work-related injury where the employer's fraudulent misrepresentation has been alleged." Martin v. Lancaster Battery Co., 606 A.2d 444, 447 (Pa. 1992). The employer's misrepresentation must result in an "aggravat[ion] of a pre-existing injury." Winterberg v. Transp. Ins. Co., 72 F.3d 318, 323 (3d Cir. 1995) ("Martin . . . permits a tort action for deliberate conduct which aggravates a pre-existing injury before such injury is adjudicated under the Workmen's Compensation Act."); Santiago v. Pennsylvania Nat'l Mutual Casualty Ins. Co., 613 A.2d 1235, 1241 (Pa. Super. 1992) (explaining that in Martin "the employer concealed, altered, or intentionally misrepresented information related to the work-related injury which resulted in aggravation of the injury"). Alleging that an employer showed a "willful and wanton disregard for employee safety" is insufficient to escape the PWCA exclusivity provision. Poysner v. Newman & Co., 522 A.2d 548, 551 (Pa. 1987) (the Act bars a claim that an employer intentionally misrepresented factory safety conditions to federal safety inspectors).

Plaintiff has not alleged any pre-existing work-related injury. Rather, she alleges that Mr. Barker had diabetes and high blood pressure. She does not suggest that either condition was caused by his work at the meatpacking plant. She also alleges that Tyson "directly misrepresented to workers that there was no risk of infection and/or that the workers were unlikely to become infected and/or deliberately withheld their knowledge of workers at The Plant becoming infected with COVID-19." (Doc. No. 1-1, ¶ 168.) Plaintiff thus has not alleged Tyson's wrongful conduct aggravated a pre-existing work-related injury. See Winterberg, 72 F.3d at 232. Accordingly, Plaintiff's fraudulent misrepresentation and intentional misrepresentation claims do not fall within the "narrow exception" to PWCA exclusivity. See id.; Martin, 606 A.2d at 447-48.

V.   **CONCLUSION**

The Workers Compensation Act was created to provide "workers expeditious coverage for

6

their medical expenses and financial stability during their work-related disability in exchange for not suing their employer in court." <u>Nagle</u>, 148 A.3d at 961.  The Act thus deprives Mr. Barker of "common law [suits] in tort" against his employer, Tyson.  <u>See</u> <u>id.</u> at 956.  Because any attempt to amend would be futile, I will dismiss Plaintiff's Complaint with prejudice.  Although this result may seem harsh, it is the result the law requires.

      Tyson's Motion to Dismiss is granted.

      An appropriate Order follows.


December 6, 2021                                                  <u>*/s/ Paul S. Diamond*</u>
                                                                                Paul S. Diamond, J.